1  BROWNE GEORGE ROSS
   O'BRIEN ANNAGUEY & ELLIS LLP
2  Keith J. Wesley (State Bar No. 229276)
     kwesley@bgrfirm.com
3  Matthew L. Venezia (State Bar No. 313812)
     mvenezia@bgrfirm.com
4  2121 Avenue of the Stars, Suite 2800
   Los Angeles, California 90067
5  Telephone: (310) 274-7100
   Facsimile: (310) 275-5697
6
   Attorneys for Plaintiff
7  Kamille Faye Vinluan-Jularbal

8

9
                    UNITED STATES DISTRICT COURT
10
                    EASTERN DISTRICT OF CALIFORNIA
11

12

13 | KAMILLE FAYE VINLUAN-JULARBAL, | Case No. 2:21-cv-00573-JAM-JDP
14 | Plaintiff, | **FIRST AMENDED COMPLAINT FOR:**
   |  | **(1) VIOLATION OF CALIFORNIA'S**
15 | vs. | **UNFAIR COMPETITION LAW; AND**
   |  | **(2) VIOLATION OF CALIFORNIA'S**
16 | REDBUBBLE, INC., | **CONSUMER LEGAL REMEDIES ACT**
17 | Defendant. |

1816125.1

FIRST AMENDED COMPLAINT

Plaintiff Kamille Faye Vinluan-Jularbal ("Plaintiff") brings this Complaint individually, and on behalf of all persons similarly situated, against Defendant Redbubble, Inc. ("Redbubble"), and alleges as follows:

**PARTIES**

1. Plaintiff Kamille Faye Vinluan-Jularbal is an individual residing in Elk Grove, California.

2. Plaintiff is informed and believes, and thereon alleges, that defendant Redbubble is a Delaware corporation with its principal place of business in San Francisco, California.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the amount in controversy well exceeds $5 million and Plaintiff represents a putative nationwide class that includes well in excess of 100 members, and upon information and belief, includes members from each of the other 49 states besides California.

4. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because Plaintiff resides in and made her purchases within this district, and thus, a substantial part of the events or omissions that gave rise to the claims asserted herein occurred within this district.

5. This Court has personal jurisdiction over Redbubble because, upon information and belief, Redbubble maintains its principal place of business in California. This Court also has personal jurisdiction over Redbubble because Redbubble regularly markets and sells goods, including goods at issue in this case, to customers in California, and specifically in this district.

**GENERAL ALLEGATIONS**

**A.    Redbubble Encourages Counterfeiting and Infringements on Its Website, and Sells a Massive Amount of Counterfeit and Infringing Products**

6. Founded in 2006, Redbubble describes its mission as "Bringing more creativity into the world." But, in reality, its website is saturated with counterfeit and infringing products, with sales of such products accounting for millions upon millions of dollars in yearly revenue to Redbubble.

7. Through Redbubble's website, www.redbubble.com, visitors can upload designs.

1 Redbubble then affixes the designs to its stock photos of blank products to provide customers with
2 a picture of what the design will look like when printed on a physical product, i.e., the final
3 product. Redbubble displays the designs on a large variety of types of products—from t-shirts to
4 phone cases to stickers to prints, among other things—pictured on the site.

5    8.    Redbubble offers for sale the products on display, using the final product photos in
6 product listing pages hosted by Redbubble on its site. An example of a product listing page from
7 www.redbubble.com is picture below. (To be clear, Redbubble does not sell authentic Nike
8 merchandise. This product is a counterfeit.)



9    9.    If a visitor to the site orders a product, upon information and belief, Redbubble then
10 transmits the order to one of its partners to be printed on a blank physical product. This business
11 model is commonly referred to as "print-on-demand" because companies like Redbubble do not
12 hold inventory of finished products, but instead print or facilitate the printing of the designs on
13 physical products when an order is placed.

14    10.    Redbubble handles every aspect of the sales made on www.redbubble.com.
15 Customers complete their purchases on the site, with Redbubble taking their payment information,
16 processing the payments, and depositing the money into their account. Once the order is complete,
17 Redbubble provides order confirmations on its site and by e-mail, providing customers with

tracking numbers for shipment of their purchases. All customer service is provided by Redbubble.

11. Again, once an order is placed, upon information and belief, Redbubble sends the order to one of its partners to be printed. Redbubble pays the printer to manufacture the item and exercises control over the operations of the printers, including site visits to ensure the printers are following its manufacturing standards.

12. Redbubble further provides its printing partners with Redbubble packaging for the products to be sent to customers, examples of which are pictured below:



13. Once Redbubble's printing partners place the products in Redbubble packaging, they deposit the items with major carriers for delivery to customers. Redbubble maintains agreements with these carriers, and shipment is made according to the method selected and paid for by customers on www.redbubble.com.

14. When a sale is made by Redbubble, Redbubble pays a portion of the sales proceeds to the user who originally uploaded the design, but keeps the majority of the proceeds for itself.

15. Using this business model, Redbubble is advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from massive quantities of counterfeit and infringing products. Many of the counterfeit and infringing products incorporate exact replicas of registered trademarks (on products in the classes for which the marks are registered) and copyrighted materials. Other products infringe upon unregistered trademarks and trade dress. This infringement has ranged from any well-known brand one could think of to lesser known intellectual properties. A few examples of such infringing products are pictured below:

CHANEL

McDonald's

verizon

COWBOYS

The Godfather

BUD LIGHT

16. Redbubble's infringement is knowing and willful, as evidenced by (a) the sheer quantity of different counterfeit and infringing designs being sold by Redbubble, (b) the exact duplication of a variety of iconic intellectual properties, and (c) Redbubble's pattern and practice of infringing upon the intellectual property rights of well-known brands.

17. Moreover, unlike many of its competitors, Redbubble refuses to disable use of well-known trademarks as keywords on its platform. This allows Redbubble users to label items, for example, as "nike Classic T-Shirt," and Redbubble customers to easily locate such an item by searching for "nike." Because Redbubble places a significant amount of online advertisements, when a customer searches for "nike" (or other well-known trademarks) on a search engine like Google, upon information and belief, the counterfeit items sold by Redbubble appear side-by-side in the search results with authentic products.

18. Redbubble also refuses to proactively search for counterfeit or infringing items on its website. Upon information and belief, it is Redbubble's policy to not monitor its website for counterfeits or infringing items unless it has previously received a takedown notice from or been sued by the rights holder. So far as Redbubble believes, they are free to sell knockoffs from any well-known brand up and until the point they get caught by the owner.

19. Even where Redbubble receives a complaint and removes an infringing item from its website, it many times does not block the user from uploading further designs to the platform. An analysis of data collected by one third-party company that is retained by rights holders to police infringements on Redbubble shows that, just as to their clients, 412 Redbubble users had to be reported three or more times before being banned from the platform, with one user being reported 34 times.

20. Redbubble's 2019 Annual Report bragged that 76% of its product revenue originated from "authentic sellers." Taking Redbubble at its word, this means that 24% of its sales were "inauthentic" or infringing, which would mean Redbubble sold approximately $46.56 million worth of infringing products in 2019. This is the *self-reported* number. Upon information and belief, the percentage of infringing products sold by Redbubble significantly exceeds 24%, and Redbubble's yearly sales of infringing products are significantly higher than $46.56 million.

21.     Unsurprisingly, Redbubble has been sued for trademark and copyright infringement in Federal courts on multiple occasions. Redbubble has also been found liable for infringement in its home country of Australia.

22.     While Plaintiff understands that Redbubble does employ some amount of "content moderators" ostensibly tasked with removing infringing products from the site when Redbubble receives complaints from third parties, the continued infringements on www.redbubble.com are convincing evidence that Redbubble's content moderation policies are woefully deficient to avoid infringements on its site. While Redbubble makes arguments as to the difficulties in policing the amount of products on its site, Redbubble earns hundreds of millions of dollars in revenue each year. If it truly desired to avoid infringements, it could do so by allocating additional resources, e.g., by hiring more content moderators. At minimum, its failure to do so is willful blindness.

23.     Redbubble is indisputably aware that it is required to obtain licenses to sell items emblazoned with third-parties' intellectual property. It created a "Brand Partnership" program, allowing users to make designs using certain third-parties' intellectual property. The website for the program notes that "it's important to remember and respect the wishes of the Rights Holders, who have developed all the brands you want to use in your artwork."

24.     While Redbubble is required to obtain a license to sell such merchandise, that Redbubble obtains a license for some minority of its products only adds to the confusion for consumers. That is, consumers are not aware of the terms of every licensing deal obtained by Redbubble, rendering it nearly impossible for average Redbubble consumers to determine whether they are buying licensed merchandise, or illegal counterfeits/infringing products. The licensed products are sold alongside the counterfeits and infringing products.

**B.    Redbubble Chooses to Retain the Sales Proceeds From Counterfeit and Infringing Products, Even After the Sales Are Identified as Infringing**

25.     Redbubble reported $322.8 million in revenue for 2020, $238.1 million in revenue

for 2019, $179.4 million in revenue for 2018, and $136 million for 2017.[1]

26. Given the large volume of counterfeit and infringing items for sale on Redbubble, upon information and belief, a significant percentage of these revenues result from Redbubble's sale of illegal counterfeits and infringing products. Again, in 2019, Redbubble self-reported that 24% of its sales originated from non-authentic sellers. While Plaintiff believes the actual percentage is significantly higher, applying Redbubble's own percentage across 2017–2020, Redbubble would have sold a staggering $210.3 million in counterfeit and infringing goods in its past four fiscal years.

27. Redbubble retains the revenues from the sales of counterfeit and infringing products on www.redbubble.com.

28. Upon information and belief, Redbubble has removed a large quantity of counterfeit and infringing products from www.redbubble.com pursuant to third-party complaints and lawsuits.

29. Even where items have been identified as infringing and removed by Redbubble, as described above, upon information and belief, Redbubble does not refund payments received for prior sales of those products. Redbubble thus knowingly retains proceeds from the sales of such illegal counterfeit and infringing goods.

30. While lawsuits filed by rights holders against Redbubble may ultimately provide some level of recompense to the small minority of intellectual property owners that expend the resources to file a lawsuit against Redbubble, they provide Redbubble's customers with no compensation. Redbubble customers never receive what they paid for—legal non-infringing goods—instead receiving only knockoffs with little to no value.

**C. Redbubble Unfairly Competes With Intellectual Property Owners and Licensees**

31. By selling products emblazoned with intellectual property owned by third parties,

---

[1] Redbubble reports its revenue in Australian currency. These figures have been converted to United States dollars using an online currency converter and rounded.

1  without obtaining a license to do so, Redbubble violates the Lanham Act and Copyright Act and
2  engages in unfair competition.

3      32. Many companies sell products emblazoned with their own trademarks and
4  copyrights, for example, Nike sells apparel emblazoned with "Nike." By selling counterfeits and
5  infringing products, Redbubble directly takes sales from such companies.

6      33. Moreover, many companies sell licensed merchandise, for which they must pay a
7  fee to obtain a license from the licensor. This is a significant cost for these companies and inherent
8  in this business model. By failing to pay for licenses and instead selling counterfeits and infringing
9  products, Redbubble does not incur the same cost, and is able to undercut its competitors on
10 price/keep a larger percentage of the sales revenue. (In addition to depriving rights holders of
11 licensing fees.)

12     34. Upon information and belief, if Redbubble's counterfeit and infringing products
13 were not in the marketplace, a significant number of Redbubble's customers would instead
14 purchase their products from the intellectual property holders or official licensees, that comply
15 with the Lanham Act and Copyright Act.

16     **D.** **Plaintiff Unwittingly Purchased Counterfeit and Infringing Products From**
17            **Redbubble, Not Receiving What She Paid For**

18     35. Plaintiff placed two orders with Redbubble, each of which included infringing
19 products. On or about December of 2020, Plaintiff ordered a United Nations sweatshirt from the
20 Redbubble website. Below is a comparison of the product purchased by Plaintiff, on the left, and
21 authentic merchandise taken from the United Nations' website, on the right.







36. The United Nations emblem and wordmark are trademarks owned by the United Nations Organisation, registered with the United States Patent and Trademark Office at Serial Nos. 89000156 and 89000157.

37. These marks are well-known in the public domain and serve a source identifying function with the United Nations. The United Nations itself sells merchandise and apparel emblazoned with the United Nations wordmark and its famous emblem on its website.

38. On or about January of 2021, Plaintiff ordered a "Dadalorian" sweatshirt from the Redbubble website. Below is a comparison of the product purchased by Plaintiff, on the left, and an example of the official logo from *The Mandalorian* television series from which this design was copied, on the right.

1816125.1

-9-

FIRST AMENDED COMPLAINT




39. As can be seen on the right, *The Mandalorian*'s logo has an original image that is visible through the individual letters. The "Dadalorian" sweatshirt copies that original image. Specifically, inside the "A" is a silhouette of the protagonist, inside the "D", "O". and "N" are structures, and a coastline is visible through each of the letters.

40. The only difference in the designs are the letters themselves, the infringing design replacing "MAN" with "DA." This itself is a reference to the series because the protagonist in *The Mandalorian* acts as a father figure to a character affectionately known as "Baby Yoda."

41. At the absolute minimum, the Redbubble image is substantially similar to the copyrighted *The Mandalorian* image.

42. *The Mandalorian* image copied in Redbubble's product is copyrighted by Disney, all rights reserved. Disney did not authorize any use of the copyrighted material by Redbubble.

43. In purchasing these products, Plaintiff was unaware of their infringing nature, or that the products were sold in violation of the Lanham Act and Copyright Act. Had Plaintiff

known, she would not have purchased the products. Indeed, these particular products were chosen due to an affinity for the United Nations, and *The Mandalorian* series. Plaintiff would not have knowingly supported counterfeiters and infringers of such intellectual property rights.

44. Plaintiff relied in good faith on Redbubble's compliance with applicable laws when purchasing these products.

45. Further, upon information and belief, these products were of lesser quality than would have been required for authentic merchandise licensed by either the United Nations or Disney.

46. Intending to purchase authentic, legal products, Plaintiff did not receive what she paid for. The products are of lesser quality than authentic licensed merchandise, and because the products were purchased due to their connection with the United Nations and *The Mandalorian*, with the products being knockoffs, they have zero value to Plaintiff.

### E. Redbubble Ignores Plaintiff's CLRA Notice

47. On March 29, 2021, Plaintiff sent Redbubble a demand letter, pursuant to Section 1782 of California's Civil Code, advising Redbubble of the allegations made in this lawsuit, and demanding "that Redbubble correct, repair, replace, or otherwise rectify the counterfeit and infringing products it has sold to Plaintiff, and the putative class of Redbubble customers she represents."

48. This letter further informed Redbubble that should it "fail to do so within 30 days of its receipt of this letter, complying with each requirement of section 1782 of California's Civil Code, including subsections (b) and (c), Plaintiff will seek all damages available from Redbubble pursuant to California's Consumer Legal Remedies Act on behalf of herself and the putative class she represents."

49. This letter was sent to Redbubble by certified mail, return receipt requested, on March 29, 2021. Redbubble signed the delivery receipt, and the United States Post Office's records indicate that the letter was delivered to Redbubble on April 1, 2021.

50. Nonetheless, Redbubble did not respond to the CLRA demand letter. Nor did Redbubble make any attempt to address the complaints made by Plaintiff on behalf of herself and

the putative class she represents.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action on behalf of herself and a putative class of Redbubble customers who are similarly situated under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure (the "Customer Class").

52. The Customer Class seeks damages, equitable restitution, and injunctive relief, and is defined as follows:

- All persons or entities in the United States that have purchased counterfeit or infringing products from Redbubble, by way of its website, www.redbubble.com. For the purposes of this class, counterfeit or infringing products are defined to include all products sold in violation of the Lanham Act and Copyright Act, or similar state-law statutes.

53. Upon information and belief, given that Redbubble's revenue is in the hundreds of millions of dollars per year, and given the volume of counterfeit and infringing products available on Redbubble's website, this class includes, at minimum, tens of thousands of Redbubble customers located throughout the United States. The exact number and identities of the Customer Class is known or readily ascertainable by Redbubble, and the number of persons who fall within the definition of the Customer Class is so numerous and geographically dispersed as to make joinder of all members of the Customer Class in their individual capacity impracticable, inefficient, and unmanageable so as to effectively deny each putative Customer Class member his, her, or their right to obtain relief based on the claims and allegations made in this Complaint.

54. There are common questions of law and fact as to the Customer Class, relating to and/or dispositive of the allegations of unlawful conduct made in the Complaint, and relating to and/or dispositive of the common pattern of alleged injury and harm caused by that unlawful conduct and sustained by the putative members of the Customer Class, including, but not limited to:

- Whether Redbubble is sufficiently involved in the infringing sales made on www.redbubble.com to be deemed the seller of the infringing products.

- Whether Redbubble engages in volitional conduct when it comes to the sales of infringing products on www.redbubble.com.

- Whether Redbubble is in a partnership with its printers, such as to give rise to liability for vicarious trademark infringement.

- Whether Redbubble exercises control and monitoring of www.redbubble.com and knows or has reason to know its users are engaging in infringement, such as to give rise to contributory trademark infringement.

- Whether Redbubble has the right and ability to supervise the infringing activity on www.redbubble.com and a direct financial interest in the same, such as to give rise to liability for vicarious copyright infringement.

- Whether Redbubble has knowledge of the infringements on www.redbubble.com and either (a) materially contributes to or (b) induces that infringement, such as to give rise to liability for contributory trademark infringement.

- Whether Redbubble engages in willful blindness when it comes to the sales of infringing products on www.redbubble.com.

- Whether the value of the infringing goods sold by Redbubble are lesser than that of authentic, licensed goods, and if so, the difference in value between authentic and counterfeit or infringing goods.

- Whether the Customer Class is entitled to recover damages or equitable restitution equal to any such difference in value.

- Whether Redbubble has ever provided a refund to the purchaser of an infringing product after discovering the product was counterfeit or infringing, or contrarily, whether Redbubble chooses to retain the proceeds from discovered infringing sales.

55.   The interests of Plaintiff and the Customer Class are aligned. Plaintiff seeks to establish that Redbubble is required to refund amounts paid by customers for counterfeit or infringing products, in an amount reflecting the difference in value between an authentic product,

1  and an illegal counterfeit or infringing product. Should Plaintiff prevail in establishing the same, each of the other members of the Customer Class would then be entitled to similar compensation for the damage caused to them by Redbubble's sale of counterfeit or infringing items.

56. The claims of Plaintiff are typical of the claims of the Customer Class. Plaintiff unwittingly purchased products sold by Redbubble in violation of both the Lanham Act and the Copyright Act.

57. The Customer Class is represented by counsel who are competent and experienced in the prosecution and defense of similar claims and litigation, including class actions filed, prosecuted, defended, or litigated under California and federal law, in federal courts, in connection with claims and certification of consumer classes composed of members who reside in California and/or the United States. Counsel has prosecuted numerous cases brought against print-on-demand companies like Redbubble for trademark and copyright infringement, including two cases against Redbubble itself, and prosecuted and defended many significant cases brought pursuant to California's UCL and CLRA.

58. The prosecution of separate actions by individual members of the Customer Class would create a risk of inconsistent or varying adjudications.

59. The questions of law and fact common to the members of the Customer Class predominate over any questions of law or fact affecting only individual members of the Customer Class, including legal and factual issues related to the underlying infringements. Because the infringing nature of the products at issue is generally obvious, whether the products are infringing is not at the core of the dispute in most prior cases against print-on-demand companies like Redbubble. (Indeed, Redbubble itself already determined many of the products at issue here were infringing when it removed them from its website pursuant to its intellectual property policy.) Instead, whether Redbubble is liable for the infringements on its platform is the primary issue. And, that issue is common to every member of the Customer Class.

60. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously,

efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Prosecution as a class action will eliminate the need for repetitious litigation—if it were even feasible for the Customer Class to proceed individually.

61. The amount of potential damages or restitution for each member of the Customer Class is small enough that no legal recourse can realistically be obtained by members of the Customer Class without proceeding as a class action. Thus, members of the Customer Class have no cognizable interest in individually litigating and controlling the claims asserted herein.

62. Plaintiff is unaware of any similar litigation against Redbubble begun by members of the Customer Class.

63. California is a proper and desirable forum for the claims against Redbubble to be litigated. Redbubble is based in California, and California's UCL and CLRA provide remedies to each member of the Customer Class. As to those members of the Customer Class residing outside California, California's UCL and CLRA provide remedies consistent with that which are available in the members' home states.

64. The Customer Class is readily definable by review of sales and content moderation records that should exist in the files of Defendant. Moreover, Redbubble should have records of the e-mail addresses and addresses of customers that have purchased products on www.redbubble.com such that providing notice to the Customer Class will be practicable. Thus, there does not exist any significant likely difficulties in managing the claims as a class action.

## FIRST CAUSE OF ACTION

**(Violation of California's Unfair Competition Law [Cal. Bus. & Prof. Code § 17200 et seq.])**

65. Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth in paragraphs 1 through 64 above.

66. Redbubble has committed acts of unfair competition, as defined by California Business and Professions Code § 17200, by engaging in the unlawful practices described above. Without limitation, Redbubble violates the Lanham Act and Copyright Act by infringing upon trademarks, trade dress, and copyrights, respectively. Redbubble's infringement of intellectual property also violates California state law and the laws of each state where members of the

1 Customer Class reside.

2     67.    While California's unfair competition law does not so require, Redbubble's practices are in fact anticompetitive in the classic sense. Redbubble unfairly competes for sales with the owners and licensees of the intellectual property that Redbubble affixes on its products without right to do so.

    68.    Plaintiff and each member of the Customer Class suffered an injury as a direct and proximate result of Redbubble's infringements. When Plaintiff and each member of the Customer Class purchased products from Redbubble, instead of receiving legal products, they received illegal counterfeits or infringing products. These illegal counterfeits or infringing products are of lesser value than legal products. Redbubble's infringement also causes intangible harms, including but not limited to, damage to brands and artists that customers intended to support, and embarrassment.

    69.    Plaintiff and the Customer Class did not intend to purchase counterfeit or infringing items, instead relying on the assumption Redbubble was operating within the confines of applicable law, and that the items sold on its website were what they purported to be.

    70.    Upon information and belief, the above-described operations of Redbubble occur in California, where it is headquartered. When any customer purchases a product from Redbubble, they access a website published from California and send money into California in exchange for a product from California.

    71.    Plaintiff and the Customer Class are without an adequate remedy at law. Redbubble's infringement is ongoing and will continue absent injunctive relief, causing continued economic and intangible harms to customers.

### SECOND CAUSE OF ACTION

**(Violation of California's Consumer Legal Remedies Act [Cal. Civ. Code § 1750 et seq.])**

    72.    Plaintiff re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth in paragraphs 1 through 71 above.

    73.    Redbubble has committed unlawful acts as defined by California Civil Code § 1700, by engaging in the unlawful practices described above. The trademark and copyright

1  infringements proscribed by federal law are also proscribed by this section.

2        74.    Plaintiff and each member of the Customer Class suffered an injury as a direct and proximate result of Redbubble's infringements. Redbubble's practice of selling counterfeits and infringing goods injures consumers, including Plaintiff and each member of the Customer Class, because instead of receiving legal products, they received illegal counterfeits or infringing products that are of lesser value. Redbubble's infringement also causes intangible harms, including but not limited to, damage to brands and artists that customers intend to support, and embarrassment.

      75.    Unless enjoined, Redbubble will continue sell counterfeits and infringing items to consumers, and continue to retain sales proceeds from the sales of those products, even after Redbubble identifies that counterfeit or infringing products have been sold.

      76.    Plaintiff and the Customer Class did not intend to purchase counterfeit or infringing items, instead relying on the assumption Redbubble was operating within the confines of applicable law, and that the items sold on its website were what they purported to be.

      77.    Upon information and belief, the above-described operations of Redbubble occur in California, where it is headquartered. When any customer purchases a product from Redbubble, they access a website published from California and send money into California in exchange for a product from California.

      78.    Plaintiff and the Customer Class are without an adequate remedy at law. Redbubble's infringement is ongoing and will continue absent injunctive relief, causing continued economic and intangible harms to customers.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the putative Customer Class pray for relief against Redbubble as follows:

      1.    For preliminary and permanent injunctions enjoining and restraining Redbubble, its agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of, or in concert with Redbubble, from selling counterfeit or infringing products on www.redbubble.com, or retaining the proceeds from such sales; and

1      2.     For damages or equitable restitution in the form of the difference in value between legal products and the illegal counterfeits or infringing goods actually received by Plaintiff and the Customer Class, in an amount to be determined by evidence, but well in excess of $5 million.

     3.     For punitive damages in an amount according to proof;

     4.     For pre-judgment interest on all damages awarded by this Court;

     5.     For reasonable attorneys' fees and costs of suit incurred herein; and

     6.     For such other and further relief as the Court deems just and proper.

DATED: May 21, 2021

BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
    Keith J. Wesley
    Matthew L. Venezia

By:    /s/ *Matthew L. Venezia*
        Matthew L. Venezia
Attorneys for Plaintiff Kamille Faye
Vinluan-Jularbal

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: May 21, 2021

BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
    Keith J. Wesley
    Matthew L. Venezia

By:    */s/ Matthew L. Venezia*
      Matthew L. Venezia
Attorneys for Plaintiff Kamille Faye Vinluan-Jularbal