KENNETH B. WILSON (State Bar No. 130009)
  ken@coastsidelegal.com
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR (State Bar No. 203510)
  jmasur@zuberlawler.com
ZUBER LAWLER LLP
2000 Broadway Street, Suite 154
Redwood City, California 94063
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

MATTHEW E. HESS (State Bar No. 214732)
  mhess@zuberlawler.com
ZUBER LAWLER LLP
350 S. Grand Avenue, 32nd Floor
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| KAMILLE FAYE VINLUAN-JULARBAL,<br><br>                    Plaintiff,<br><br>          v.<br><br>REDBUBBLE, INC.,<br><br>                    Defendant. | Case No. 2:21-cv-00573-JAM-JDP<br><br>**DEFENDANT REDBUBBLE INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO DISMISS THIS ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          July 27 , 2021<br>Time:          1:30 p.m.<br>Courtroom:  6<br>Judge:        Hon. John A. Mendez |

2911-1018 / 1813635.1

1   TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on July 27, 2021, at 1:30 p.m., in Courtroom 6 of the

3   U.S. District Court for the Eastern District of California, located at 501 I St., Sacramento,

4   California 95814, 14th Floor, defendant Redbubble Inc. ("Redbubble") will move, and hereby

5   moves, for an order compelling arbitration of plaintiff Kamille Faye Vinluan-Jularbal's

6   ("Plaintiff's") dispute with Redbubble in accordance with the parties' agreements, and dismissing

7   this lawsuit without prejudice. This Motion is made on the ground that the parties agreed to an

8   enforceable arbitration provision that covers the claims asserted in the Complaint.

9         The Motion is based on this Notice, the following Memorandum of Points and Authorities,

10   the Declarations of James Toy and Kenneth B. Wilson filed in support of this motion, all other

11   pleadings, papers, records and documentary materials on file or deemed to be on file, those other

12   matters which may be judicially noticed, the arguments of counsel made when this Motion is

13   heard, and such other evidence and materials as the Court may consider.

14         This motion is made following the conference of counsel pursuant to the Court's standing

15   order which took place on May 17, 2021.

16

17   Dated:  May 26, 2021                    COASTSIDE LEGAL
                                             KENNETH B. WILSON
18

19                                          ZUBER LAWLER  LLP
                                             JOSHUA M. MASUR
20                                           MATTHEW E. HESS

21

22                                     By:  /s/ Joshua M. Masur

23                                          Joshua M. Masur
                                            Attorneys for Defendant
24                                          Redbubble Inc.

25

26

27

28

2911-1018 / 1813635.1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................................1

II.  STATEMENT OF FACTS .............................................................................................1

    A.  General Description of the Redbubble Marketplace ...................................1

    B.  Plaintiff's Agreement with Redbubble ..........................................................2

    C.  Background of this Lawsuit ..............................................................................4

III.  THE COURT SHOULD COMPEL ARBITRATION AND DISMISS THIS ACTION ............................................................................................................................5

    A.  Federal Policy Favors Arbitration of Disputes ...........................................5

    B.  A Valid Agreement to Arbitrate Exists Between Plaintiff and Redbubble ...............6

    C.  Plaintiff and Redbubble Have Agreed to Arbitrate This Dispute ...........................8

    D.  The Arbitration Agreement Is Enforceable Even Though Plaintiff Asserts CLRA and UCL Claims and Seeks Injunctive Relief. .................................9

    E.  The Arbitration Agreement Is Enforceable Even Though It Includes a Class Action Waiver. ..............................................................................11

IV.  CONCLUSION .............................................................................................................12

DEFENDANT REDBUBBLE INC.'S NOTICE OF MOTION AND MOTION
TO COMPEL ARBITRATION AND TO DISMISS ACTION

# TABLE OF AUTHORITIES

**Page**

## Cases

*American Express Corp. v. Italian Colors Restaurant,*
  570 U.S. 228 (2013) ........................................................................... 11

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) ............................................................... 6, 8, 11

*Blair v. Rent-A-Center., Inc.,*
  928 F.3d 819 (9th Cir. 2019) ................................................................ 9

*Buckeye Check Cashing, Inc. v. Cardegna,*
  546 U.S. 440 (2006) ............................................................................ 6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
  207 F.3d 1126 (9th Cir.2000) ............................................................... 9

*Cordas v. Uber Techs., Inc.,*
  228 F. Supp. 3d 985 (N.D. Cal. 2017) .................................................. 7

*Cruise v. Kroger Co.,*
  233 Cal. App. 4th 390 (2015) ............................................................... 6

*DiCarlo v. MoneyLion, Inc.,*
  988 F.3d 1148 (9th Cir. 2021) .......................................................... 9, 11

*Gilmer v. Interstate/Johnson Lane Corp.,*
  U.S. 20 (1991) ...................................................................................... 8

*In re Facebook Biometric Info. Priv. Litigation,*
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ............................................... 8

*Knutson v. Sirius XM Radio Inc.,*
  771 F.3d 559 (9th Cir. 2014) ................................................................ 6

*Laver v. Credit Suisse Sec. (USA), LLC,*
  976 F.3d 841 (9th Cir. 2020) .............................................................. 11

*Long v. Provide Commerce, Inc.,*
  245 Cal. App. 4th 855 (2016) ............................................................... 7

*McGill v. Citibank, N.A.,*
  2 Cal. 5th 945 (2017) ............................................................................ 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*
  473 U.S. 614 (1985) ............................................................................. 6

*Morales v. Lexxiom, Inc.,*
  2010 U.S. Dist. LEXIS 151809
  (C.D. Cal. Jan. 29, 2010) ..................................................................... 8

ii

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ............................................................................................................. 8

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ...................................................................................... 7

*Serafin v. Balco Properties Ltd., LLC*,
    235 Cal. App. 4th 165 (2015) ....................................................................................... 6

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ........................................................................ 8

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) ...................................................................................... 6

## <u>Statutes</u>

9 U.S.C. - Federal Arbitration Act ........................................................................................ 5

California Business & Professions Code §17200 ........................................................ 5, 9, 10

California Civil Code §1750 ............................................................................................ 5, 9, 10

## I.    INTRODUCTION

Plaintiff Kamille Faye Vinluan-Jularbal ("Plaintiff") entered into a User Agreement (the "Agreement") with defendant Redbubble Inc. ("Redbubble") that governed her relationship with Redbubble and her use of the Redbubble marketplace. That Agreement provided that:

> [A]ll disputes relating to this User Agreement, or relating to your use of any part of the Redbubble service, will be exclusively resolved under confidential binding arbitration held in San Francisco, California. All disputes will be resolved in accordance with the Rules of JAMS, applying California law, without regard to conflicts of law principles.

There is no question that Plaintiff's claims in this action, which are based exclusively on her purchase of products "from the Redbubble website," are "relating to" the Redbubble User Agreement and more specifically her "use of . . . the Redbubble service." [Complaint ¶¶ 35, 38] Accordingly, Redbubble respectfully requests that Plaintiff be compelled to arbitrate her dispute with Redbubble per her agreement to do so, and that this lawsuit be dismissed.

## II.    STATEMENT OF FACTS

### A.    General Description of the Redbubble Marketplace

Like eBay and the Amazon Marketplace, the Redbubble marketplace is a global online platform, hosted at www.redbubble.com (the "Redbubble Marketplace"). Founded in 2006, and the wholly-owned subsidiary of a publicly traded Australian company, Redbubble was formed to give independent artists a meaningful new way to sell their creations. [Declaration of James Toy in Support of Defendant Redbubble Inc.'s Motion to Compel Arbitration and to Dismiss ("Toy Decl."), ¶ 2]

Using the Redbubble Marketplace, these third-party artists (also referred to as "Sellers") can upload their designs and elect to have them imprinted and sold on high-quality, everyday products such as apparel, stationery, housewares, bags, and wall art, which these Sellers list and sell through the Marketplace. [Toy Decl., ¶ 2] In addition, the Marketplace software automatically performs various online services to facilitate the transactions that occur through the Marketplace. In particular, the Marketplace software connects Sellers automatically to third-party

1

1   manufacturers, who print and pack the products before third-party shippers pick up the products

2   and deliver them to customers.  The platform also provides Sellers access to third-party payment

3   processors who collect and process payments from their customers.  This transaction process is

4   entirely Seller-directed and automated by the Redbubble Marketplace software. [Toy Decl., ¶ 3]

5       More than 3,700,000 independent third-party Sellers use the Redbubble Marketplace  to

6   upload their creative designs and sell products bearing such designs. Shoppers can browse through

7   more than 50 million designs on the Redbubble Marketplace, and over 1.9 billion products bearing

8   these designs are currently offered for sale by these third-party Sellers. [Toy Decl., ¶ 4]

9       B.      **Plaintiff's Agreement with Redbubble**

10      Plaintiff signed up to become a registered Redbubble user on December 1, 2020, under the

11  user name "kammyv." [Toy Decl., ¶ 6, Exh. A] As part of the process of becoming a registered

12  user of the Redbubble Marketplace, Plaintiff was first required to and did consent to the terms of

13  the standard Redbubble User Agreement, as does every other registered user of the Redbubble

14  Marketplace. [Toy Decl., ¶  7, Exh. B] Indeed, all registered users of the Redbubble Marketplace

15  since May 1, 2019 have consented to this very same form of Agreement. [Toy Decl., ¶ 7]

16      More specifically, to become a registered Redbubble user, Plaintiff, like all other registered

17  users, provided an email, user name and password on a registration page on the Redbubble

18  website. Plaintiff then clicked a "Sign Up" button immediately above a statement verifying that

19  "[b]y clicking *Sign Up*, you agree to our **User Agreement** and **Privacy Policy.**" The phrase "User

20  Agreement" and the phrase "Privacy Policy" are bolded and in darker font than the surrounding

21  text, and the phrase "User Agreement" comprises a hyperlink to the User Agreement itself. [Toy

22  Decl., ¶ 8, Exh. C] An image of the "Sign Up" button portion of this page is depicted below.

23

24

Sign Up

25

26  By clicking *Sign Up*, you agree to our **User Agreement** and

27  **Privacy Policy**, and to receive our promotional emails (opt out

any time).

28

2

1    Similarly, when Plaintiff made each of the two purchases on which her claim is based, she

2    was required to complete the transaction using a page generated on the Redbubble website entitled

3    "Your shopping cart." To consummate the purchase, Plaintiff clicked a "Pay $[Purchase Amount]"

4    button, above which appears the statement "By clicking pay, I agree to Redbubble's **User**

5    **Agreement**." As was the case with the registration page, the phrase "User Agreement" was bolded

6    and in a darker font than the surrounding text (and is also underlined to set it off further from the

7    surrounding text), and comprises a hyperlink to the User Agreement. [Toy Decl., ¶ 9, Exh. D] An

8    image of the payment button portion of this page is depicted below.

9

10    By clicking pay, I agree to
       Redbubble's <u>User Agreement</u>

11

12    Pay $45.58

13

14    The terms of the User Agreement (which is separately accessible through a link at the

15    bottom of each page of the Redbubble site) begin by affirming that "Redbubble is about

16    celebrating creativity," and that "To make this online destination for creativity available, it is

17    essential all Redbubble users respect the intellectual property rights of others, including copyright

18    and trademarks. You must only upload content you have created yourself and have permission to

19    use and authorize others to use. If you are a customer or browser, please respect the copyright and

20    trademarks of all the works you see or buy on Redbubble. Respecting other people's intellectual

21    property is an essential principle of Redbubble's community." [Toy Decl., ¶ 11, Exh. B]

22    More importantly for purposes of this motion, the Agreement also contains a dispute

23    resolution clause. That clause specifies that "This User Agreement and all disputes relating to this

24    User Agreement, or relating to your use of any part of the Redbubble service, will be exclusively

25    resolved under confidential binding arbitration held in San Francisco, California. All disputes will

26    be resolved in accordance with the Rules of JAMS, applying California law, without regard to

27    conflicts of law principles." It also states that "any dispute resolution proceedings will be

28

3

1    conducted only on an individual basis and not in a class, consolidated or representative action."

2    [Toy Decl. Exh. B]

3         Pursuant to the terms of this Agreement, Plaintiff made two sets of purchases from the

4    Redbubble Marketplace, one on December 1, 2020, and the other on December 29, 2020.

5    [Complaint ¶¶ 35, 38; Toy Decl. Exh. E]

6         C.    **Background of this Lawsuit**

7         Late last year, a Los Angeles law firm by the name of Browne George Ross O'Brien

8    Annaguey & Ellis LLP ("Browne George"), who represents rightsholders Atari and Y.Y.G.M., SA

9    in two separate intellectual property cases against Redbubble, decided to parlay their work for

10   these clients into another type of money-making venture. [Declaration of Kenneth B. Wilson in

11   Support of Defendant Redbubble Inc.'s Motion to Compel Arbitration and to Dismiss ("Wilson

12   Decl."), ¶ 2] On New Year's Eve, Browne George lawyers registered the domain

13   "redbubbleinvestigation.com," along with a couple of other "investigation" domain names

14   pertaining to other online marketplaces. [Wilson Decl. Exhs. F-H] By January 4, 2021, Browne

15   George had used the redbubbleinvestigation.com domain to set up a simple website announcing

16   that the firm was "preparing a lawsuit against Redbubble for selling counterfeit products" and

17   soliciting clients for that lawsuit. Among other things, Browne George's solicitation asserted that

18   "if you have made any purchase from Redbubble since 2017, you could be entitled to a refund,"

19   and inviting that "[i]f you fit the above description, we would love to talk with you about your

20   potential claims," adding the further enticement that "[t]here is no cost or obligation to do so."

21   [Wilson Decl. ¶ 6, Exh. I]

22        Apparently, the efforts of Plaintiff's counsel bore fruit for them. On March 29, 2021,

23   Redbubble learned of an article published that day in LawDragon magazine, entitled "Browne

24   George Files Class Action to Halt Leading Online Counterfeit Merchandiser." This article, which

25   appears to be more a paid advertisement than a news article, features a staged photo of Keith

26   Wesley, Plaintiff's lead counsel, and numerous quotes from Wesley and another Brown George

27   lawyer that appear designed to generate publicity for the lawyers and the law firm and perhaps to

28   recruit clients for a newly filed class action. [Wilson Decl., ¶ 7, Exh. J]

1    Upon investigation, Redbubble learned that the same day as the article was published,

2  Browne George filed this purported class action lawsuit with Plaintiff as the sole named class

3  representative, asserting claims under California's statutory Unfair Competition Law, Business &

4  Professions Code §17200 et seq. (the "UCL") and California's Consumer Legal Remedies Act,

5  Cal. Civil Code §1750 *et seq.* (the "CLRA"). [Wilson Decl., ¶ 8] Remarkably, although Browne

6  George was intimately familiar with the Redbubble User Agreement, having litigated two cases

7  through summary judgment in which the User Agreement played a prominent role, they filed this

8  action in direct contravention of the Agreement, and specifically the arbitration clause and class

9  action waiver. [Wilson Decl., ¶ 9] Indeed, the User Agreement that Plaintiff entered into as a

10  precondition of purchasing products through the Redbubble Marketplace is not so much as

11  mentioned in her Complaint.

12    The gist of Plaintiff's Complaint is that she ordered products that she claims are counterfeit

13  on two separate occasions "from the Redbubble website," although one of the two products

14  identified in the Complaint is clearly a transformative work [Complaint ¶¶ 35, 38] Through the

15  lawsuit, Plaintiff and her counsel seek to represent anyone who has ever purchased "counterfeit"

16  products through the Redbubble Marketplace, regardless of whether they were deceived or care

17  about whether the products were counterfeit, although for reasons that Redbubble will elaborate on

18  if this case moves forward in this forum, Plaintiff's claims are wholly without substantive merit,

19  and incapable of being resolved in a class context.

20  III.    **THE COURT SHOULD COMPEL ARBITRATION AND DISMISS THIS ACTION**

21    A.    **Federal Policy Favors Arbitration of Disputes**

22    The Federal Arbitration Act ("FAA") provides that a "written provision in any . . . contract

23  evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

24  arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save

25  upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

26  The FAA requires courts to compel arbitration if (1) a valid agreement to arbitrate exists, and (2)

27  the dispute falls within the scope of that agreement. *Knutson v. Sirius XM Radio Inc.,* 771 F.3d

28

1    559, 564-65 (9th Cir. 2014). *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440,

2    442-43 (2006); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

3          There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi

4    Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985). As such, "any doubts

5    concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the

6    problem at hand is the construction of the contract language itself or an allegation of waiver,

7    delay, or a like defense to arbitrability." *Id.* at 626 (citations omitted) An arbitration agreement

8    may only "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or

9    unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning

10   from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (citations

11   omitted). Accordingly, courts may not apply traditional contractual defenses, like duress and

12   unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and

13   thereby undermine FAA's purpose to "ensur[e] that private arbitration agreements are enforced

14   according to their terms." *Id.* at 344 (citations omitted).

15         There can be no genuine dispute that a valid agreement to arbitrate exists here, and that the

16   dispute falls within the scope of that agreement. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016,

17   1032 (9th Cir. 2016).

18         B.    **A Valid Agreement to Arbitrate Exists Between Plaintiff and Redbubble**

19         Under both federal and California law, "the threshold question presented by a petition to

20   compel arbitration is whether there is an agreement to arbitrate." *Cruise v. Kroger Co.*, 233 Cal.

21   App. 4th 390, 396 (2015) (italics omitted); *Knutson*, 771 F.3d at 564-65. In this regard, federal

22   courts look to state contract law to determine whether an agreement was formed. *See Knutson*, 771

23   F.3d at 564-65. In California, general principles of contract law apply when determining whether

24   two parties have entered into a binding arbitration agreement. *Serafin v. Balco Properties Ltd.,

25   LLC*, 235 Cal. App. 4th 165, 173 (2015).

26         With respect to online contracts, there are basically two types: (1) "'clickwrap' (or 'click-

27   through') agreements, in which website users are required to click on an 'I agree' box after being

28   presented with a list of terms and conditions of use" and (2) "'browsewrap' agreements, where a

1  website's terms and conditions of use are generally posted on the website via a hyperlink at the

2  bottom of the screen." *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175-76 (9th Cir. 2014).

3  Clickwrap agreements are generally considered enforceable, while "the validity of [a] browsewrap

4  contract depends on whether the user has actual or constructive knowledge of a website's terms

5  and conditions.'" *Id.* at 1176 (citation omitted). Courts are "more willing to find the requisite

6  notice for constructive assent where the browsewrap agreement resembles a clickwrap

7  agreement." *Id.* Thus, "where the website contains an explicit textual notice that continued use will

8  act as a manifestation of the user's intent to be bound, courts have been more amenable to

9  enforcing browsewrap agreements." *Id.* at 1177. Relevant considerations include "the

10  conspicuousness and placement of the `Terms of Use' hyperlink, other notices given to users of the

11  terms of use, and the website's general design" in assessing "whether a reasonably prudent user

12  would have inquiry notice of a browsewrap agreement." *Id.* This determination is "a pure question

13  of law." *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 863 (2016).

14     The agreement at issue here contains characteristics of both a clickwrap and a browsewrap

15  agreement. However, characterization of which category it falls into is unnecessary, since on the

16  facts of this case, the signup page of the Redbubble website "contains an explicit textual notice

17  that continued use will act as a manifestation of the user's intent to be bound," which would

18  render it enforceable even if deemed a browsewrap agreement. *Nguyen*, 763 F.3d at 1176. Both of

19  Plaintiff's purchases were from a page on the Redbubble website that contains a similar textual

20  notice. That textual notice is immediately below the "Sign Up" assent button or, in the case of the

21  purchase pages, immediately above the "Pay" button, and the term **User Agreement** is bolded and

22  thus appears darker and larger than other type on the page, and also links to the terms of the

23  Agreement. Given similar facts, and in light of the strong federal policy favoring arbitration,

24  courts have had no problem concluding that an arbitration agreement presented like this is

25  enforceable. *See, e.g. Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988–89 (N.D. Cal. 2017)

26  (granting motion to compel arbitration where during account registration process, user was

27  "presented with the notice: 'By creating an Uber account, you agree to the Terms & Conditions

28  and Privacy Policy'….The phrase 'Terms & Conditions and Privacy Policy' was displayed in a

7

1   clickable box that linked a user to the pages containing the then-current terms and conditions and

2   privacy policies."); *In re Facebook Biometric Info. Priv. Litigation*, 185 F. Supp. 3d 1155, 1166–

3   67 (N.D. Cal. 2016) (arbitration agreement held enforceable when user registering for an account

4   was presented with a message stating "'[b]y clicking Sign Up, you are indicating that you have

5   read and agree to the Terms of Use and Privacy Policy,' with the terms of use presented by

6   hyperlink only. The language would have been similar if he had signed up by mobile phone");

7   *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911–12 (N.D. Cal. 2011) ("[b]ecause

8   Plaintiff was provided with an opportunity to review the terms of service in the form of a

9   hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept'… a

10  binding contract was created….")

11        C.      **Plaintiff and Redbubble Have Agreed to Arbitrate This Dispute**

12        When determining whether a claim falls within the scope of an arbitration agreement,

13  courts must indulge every presumption "in favor of arbitration." *Moses H. Cone Mem'l Hosp. v.*

14  *Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983). The party resisting arbitration has the burden of

15  proving that the claims are unsuitable for arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*,

16  U.S. 20, 26 (1991). Relevant here, arbitration provisions that govern "all" claims, disputes, and

17  controversies between the parties, without exception, cover all claims. *Concepcion*, 563 U.S. 333

18  (enforcing arbitration agreement governing "all" disputes that included class action waiver);

19  *Morales v. Lexxiom, Inc.*, 2010 U.S. Dist. LEXIS 151809, * 18-19 (C.D. Cal. Jan. 29, 2010)

20  (enforcing arbitration agreement governing "any" dispute because the language is "all

21  encompassing").

22        Here, the clause in question expressly encompassed "all disputes" relating to the

23  underlying agreement, as well as all disputes "relating to your use of any part of the Redbubble

24  service." Plaintiff was required to and did enter into the underlying agreement, and agreed to the

25  arbitration clause, when becoming a registered user, and separately did so as a condition to making

26  the purchases on which the Complaint is based. [Toy Decl., ¶¶ 7-9, Exhs. B-D] And Plaintiff

27  expressly alleged that her dispute relates to her "use of any part of the Redbubble service" by

28  asserting that the claim arose out of purchases she made "from the Redbubble website."

1  [Complaint ¶¶ 35, 38] Given these express admissions from her pleadings, Plaintiff has no

2  colorable argument that her claims fall outside the scope of the arbitration clause. *See Chiron*

3  *Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir.2000) (clause requiring

4  arbitration of any dispute "relating to" agreement was "broad and far reaching" and dispute arising

5  out of agreement was arbitrable).

6        D.     **The Arbitration Agreement Is Enforceable Even Though Plaintiff Asserts**

7              **CLRA and UCL Claims and Seeks Injunctive Relief.**

8        Based on the pre-motion conference of counsel, Redbubble anticipates that Plaintiff will

9  argue that her claims need not be arbitrated because she has stated CLRA and UCL claims and/or

10  because her Complaint seeks injunctive relief. Neither of these arguments holds water in light of

11  the Ninth Circuit's recent opinion in *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1155 (9th Cir.

12  2021), which resolved any dispute over whether such claims are inherently exempt from

13  arbitration.

14        Since 2017, there had been a handful of decisions that held that CLRA and/or UCL claims

15  seeking injunctive relief are not arbitrable, but unlike here, those cases involved arbitration

16  agreements that expressly forbid the arbitrator from granting public injunctive relief (i.e., issuing

17  an injunction that applies to individuals other than the plaintiff), in violation of California law and

18  public policy. *See, e.g., McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017) (holding that an

19  arbitration clause which only permitted injunctive relief to be awarded on an individual basis– and

20  expressly forbade injunctive relief from being issued on a "representative" basis" – was contrary

21  to the public policy of California and was not preempted by the Federal Arbitration Act); *Blair v.*

22  *Rent-A-Center., Inc.,* 928 F.3d 819, 831 (9th Cir. 2019) (refusing to enforce arbitration agreement

23  that expressly prohibited the arbitrator from awarding "relief that would affect RAC account

24  holders other than you").

25        However, in February of this year, the Ninth Circuit in *DiCarlo* explicitly held that CLRA

26  and UCL claims are arbitrable where, as here, the arbitration agreement at issue contains no such

27  express limitation on public injunctive relief. In *DiCarlo*, the parties had entered into an agreement

28  containing an arbitration clause that authorized the arbitrator to "award all [injunctive] remedies

9

1  available in an individual lawsuit under [California] law." Nevertheless, like the Plaintiff here,

2  plaintiff DiCarlo filed a class action in federal district court, asserting the very same CLRA and

3  UCL claims at issue in the instant case. DiCarlo argued that the arbitration clause effectively

4  prohibited any claim for public injunctive relief, since (in plaintiff's view) the CLRA and UCL

5  were limited to private injunctive relief, and therefore public injunctive relief could only be had

6  through a class action, which could only be maintained in court.[1] The Ninth Circuit emphatically

7  rejected this argument, reasoning that while these statutes may prevent individuals from acting as

8  private attorneys general, "litigants proceeding in individual lawsuits may request public

9  injunctive relief without becoming private attorneys general. That means that public injunctive

10  relief is available to DiCarlo in arbitration" given the absence of any prohibition of such relief in

11  the governing arbitration clause. *Id.* at 1158. Indeed, the Court went on to note that:

12  > If any doubt remains, consider this. Only an interpretation that
13  > public injunctive relief remains available will render the arbitration
    > provision "lawful" and "capable of being carried into effect." Cal.
14  > Civ. Code § 1643. And only this interpretation facilitates arbitration.
15  > *Mitsubishi*, 473 U.S. at 626. So both California law and the FAA tell
    > us what to do next—construe the Agreement to abide by *McGill* and
16  > allow arbitration.

17  *Id.*

18      Here, as in *DiCarlo*, Redbubble's arbitration agreement does not prohibit the arbitrator

19  from awarding public injunctive relief or curtail the ability to do so. To the contrary, by requiring

20  that all disputes "will be resolved in accordance with the Rules of JAMS," the agreement

21  expressly incorporated JAMS Rule 24, which authorizes the arbitrator to grant "any remedy or

22  relief that is just and equitable and within the scope of the Parties' agreement, including, but not

23  limited to, specific performance of a contract or any other equitable or legal remedy.... ***including***

24  ***injunctive relief.***" *See* https://www.jamsadr.com/rules-comprehensive-arbitration/ . Because the

25  arbitration clause does not exclude an award of public injunctive relief, Plaintiff's claims are

26  arbitrable for the reasons stated in *DiCarlo*.

27  _____

28  [1] The plaintiff in *DiCarlo* unsuccessfully argued that a clause that prohibited class action claims
    was invalid for the same reason.

10

E.     **The Arbitration Agreement Is Enforceable Even Though It Includes a Class Action Waiver.**

The Redbubble User Agreement contains a class action waiver.  Toy Decl., Exh. B.  A class action waiver is "an agreement separate from the arbitration agreement" and is independently enforceable.  *Laver v. Credit Suisse Sec. (USA)*, LLC, 976 F.3d 841, 848 (9th Cir. 2020)

The U.S. Supreme Court has made clear that such waivers are enforceable under California law. *Concepcion*, 563 U.S. at 348.  Indeed, in *Concepcion*, the Supreme Court held that class action waivers are not only enforceable, but they are necessary to carry out the FAA's goal of resolving disputes in a simple, inexpensive and expeditious fashion. *Id.* ("the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.…"). *See also American Express Corp. v. Italian Colors Restaurant,* 570 U.S. 228 (2013) (same).

Similarly, in *DiCarlo*, the arbitration agreement that the Ninth Circuit enforced contained a class action waiver. 988 F.3d at 1153 ("The [Agreement prohibits] class actions as well as claim joinder.  Under the joinder clause, DiCarlo is not allowed to 'join or consolidate claim(s) involving you with claims involving any other person….' Each MoneyLion member must arbitrate separately.")  This squares neatly with the *DiCarlo's* holding that an individual litigant may seek injunctive relief that is generally applicable to others, and that this does not transform an individual claim into a private attorney general action.  *Id.* at 1158. ("In California, litigants proceeding in individual lawsuits may request public injunctive relief without becoming private attorneys general…").

In sum, the class action waiver in Redbubble's User Agreement is enforceable under *Concepcion*, *American Express* and *DiCarlo*.

DEFENDANT REDBUBBLE INC.'S NOTICE OF MOTION AND MOTION
TO COMPEL ARBITRATION AND TO DISMISS ACTION

2911-1018 / 1813635.1

IV.   **CONCLUSION**

For the foregoing reasons, Redbubble's motion to compel arbitration should be granted, and this lawsuit should be dismissed.


Dated:  May 26, 2021                                    COASTSIDE LEGAL
                                                        KENNETH B. WILSON


                                                        ZUBER LAWLER  LLP
                                                        JOSHUA M. MASUR
                                                        MATTHEW E. HESS


                                                        By:  */s/ Joshua M. Masur*
                                                             Joshua M. Masur
                                                             Attorneys for Defendant
                                                             Redbubble Inc.

12

2911-1018 / 1813635.1