UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| KAMILLE FAYE VINLUAN-JULARBAL,<br><br>        Plaintiff,<br><br>    v.<br><br>REDBUBBLE, INC.,<br><br>        Defendant. | No.  2:21-cv-00573-JAM-JDP<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
|---|---|

Plaintiff Kamille Faye Vinluan-Jularbal ("Plaintiff") purchased two sweatshirts from Defendant Redbubble ("Defendant"): one with a United Nations symbol and the other with the words "the Dadalorian" which she believes were counterfeit. See First Am. Compl. ("FAC") ¶¶ 35, 38, ECF No. 7.  Plaintiff then brought this class action against Defendant alleging violations of (1) California's Unfair Competition Law ("UCL") and (2) California's Consumer Legal Remedies Act ("CLRA").  See generally FAC.  Before the Court is Plaintiff's Motion for a Preliminary Injunction.  See Mot. for Prelim. Inj., ECF No. 16. Defendant opposed this Motion, see Opp'n, ECF No. 36, to which Plaintiff replied.  See Reply, ECF No. 39.  For the reasons set

1

forth below, Plaintiff's request for a preliminary injunction is denied.[1]

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Founded in 2006, Redbubble allows users to upload designs that can be affixed to various products at the request of consumers. FAC ¶¶ 6-7. When a consumer places an order, Redbubble's software automatically transmits the order to a third-party manufacturer who prints the image onto a blank product to be shipped and delivered to the customer. FAC ¶ 9; Decl. of Daniel Vyrda in Supp of Def.'s Mot. for Prelim. Inj. ("Vydra Decl.) ¶¶ 3, 8, 11-12. Plaintiff made two purchases from Redbubble: the first, a United Nations sweatshirt, the second a Dadalorian sweatshirt. FAC ¶¶ 35, 38. Plaintiff alleges the items were counterfeit. Id. ¶ 43. She claims she was unaware of their infringing nature at the time of purchase and would not have bought them had she known they weren't genuine. Id.

Plaintiff believes a high volume of the images available on Redbubble's website are counterfeit. Id. This is due in part to the fact Redbubble does not proactively police its website for counterfeit or infringing items. Id. ¶ 18. Rather Plaintiff claims it is Redbubble's policy to only review items when it receives a takedown notice from or been sued by the rights holder. Id. Further, Redbubble often does not ban an infringing user until they have had several complaints. Id. ¶ 19.

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for July 27, 2021.

1    Accordingly, Plaintiff brought this class action on behalf
2 of herself and those similarly situated, alleging violations of
3 the UCL and CLRA.  Plaintiff, stressing the harm done to both the
4 trademark holders and consumers by such infringement, seeks a
5 preliminary injunction to enjoin Redbubble from selling any
6 counterfeit products on its website pending resolution of this
7 action.  See Mot. at 23-25
8
9                          II.   OPINION
10      A.   Judicial Notice
11      Courts may take judicial notice of "a fact that is not
12 subject to reasonable dispute because it: (1) is generally known
13 within the trial court's territorial jurisdiction; or (2) can be
14 accurately and readily determined from sources whose accuracy
15 cannot reasonable be questioned."  Fed. R. Evid. 201(b).
16      Plaintiff has requested the Court take judicial notice of
17 two Australian Federal Court decisions; two declarations filed
18 in a Northern District of California case; the fact the United
19 Nations Organization logo and wordmark are registered with the
20 United State Patent and Trademark Office; and a jury verdict in
21 a case in the Central District of California.  See Pl.'s First
22 Req. for Judicial Notice, ECF No. 17; Pl.'s Second Req. for
23 Judicial Notice, ECF No. 40.  The court filings and
24 registrations with the United States Patent and Trademark Office
25 are all proper subjects of judicial notice. See Reyn's Pasta
26 Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir.
27 2006) ("We may take judicial notice of court filings and other
28 matters of public record."); see also Cerner Middle E. Ltd. v.

3

iCapital, LLC, 939 F.3d 1016, 1023 n.8 (9th Cir. 2019) (taking judicial notice of a French trial court decision); Threshold Enter. Ltd. v. Pressed Juicery, Inc., 445 F.Supp.3d 139, 145 (N.D. Cal. 2020) ("Materials in the online files of the USPTO and other matters of public record are proper subjects of judicial notice.")  Accordingly, the Court GRANTS Plaintiff's request.  In doing so the Court takes judicial notice only of the existence of these documents, not disputed facts contained within.  Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

    B.   Analysis

        1.   Article III Standing

Article III of the Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies."  U.S. Const. art. II, § 2.  "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."  Clapper v. Amnesty Int'l USA, 566 U.S. 398, 408 (2013).  In order to have standing "[t]o seek injunctive relief, a plaintiff must show that [they are] under threat of suffering [an] 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).

In Davisson v. Kimberley-Clark Corp., 889 F.3d 956 (9th Cir. 2017), the Ninth Circuit held that a "previously deceived consumer may have standing to seek an injunction against false

4

1  advertising or labeling, even though the consumer now knows or
2  suspects that the advertising was false at the time of the
3  original purchase, because the consumer may suffer an 'actual
4  and imminent, not conjectural or hypothetical' threat of future
5  harm." Id. at 969.  In so holding the Court rejected the
6  argument that a plaintiff does not have standing to seek
7  injunctive relief because "plaintiffs who are already aware of
8  the deceptive nature of an advertisement are not likely to be
9  misled into buying the relevant product in the future and,
10 therefore, are not capable of being harmed again in the same
11 way." Id. at 968 (internal quotation marks and citation
12 omitted).  Rather, the Court explained that such plaintiffs
13 still suffer a threat of future harm which in some cases "may be
14 the consumer's plausible allegations that she will be unable to
15 rely on the product's advertising or labeling in the future, and
16 so will not purchase the product although she would like to."
17 Id. at 969-70.
18      Defendant argues Plaintiff does not have standing because
19 she "swears under oath that she will never 'knowingly support'
20 Redbubble based on her unsubstantiated beliefs about items
21 available for sale on its Marketplace, and so admits that she
22 will never again purchase anything on the platform in the
23 future."  Opp'n at 10 (citing Pl. Decl. in Supp. Of Mot. ¶ 9,
24 ECF No. 16-1).  The Court disagrees.  While Plaintiff stated
25 that she "would never knowingly support a company selling
26 illegal products in violation of federal law" that does not mean
27 she faces no risk of future harm.  Pl.'s Decl. in Supp. Of Mot.
28 ¶ 9.  Because Plaintiff states that she would make further

1  purchases from Redbubble in the future if she could be assured
2  the products were not counterfeits, Pl.'s Decl. in Reply ¶ 4,
3  ECF No. 53-1, Plaintiff suffers a threat of future harm of being
4  "unable to rely on the product's [authenticity], and so will not
5  purchase the product although she would like to."  See Davisson,
6  889 F.3d at 969-70.  Accordingly, the Court finds Plaintiff has
7  standing to seek injunctive relief.

        2.   UCL and CLRA Standing

To have standing under the UCL or CLRA, Plaintiff must "(1) establish a loss of deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim."  Kwikset Corp v. Superior Court, 51 Cal. 4th 310, 322 (2011).

Defendant argues Plaintiff has failed to establish standing under the UCL or CLRA as Plaintiff hasn't shown or offered any convincing evidence that the items she purchased were counterfeit.  See Opp'n at 12.  Plaintiff argues that she has shown an economic injury as she explains she paid more for the sweatshirt than she would have if she had known it was counterfeit.  See Pl.'s Reply at 3.  But Plaintiff's argument fails to address Defendant's argument that she offers insufficient evidence to support this claim and, instead, asks this Court to simply assume that the items she purchased are counterfeit.  See Def.'s Opp'n at 12 (citing Essence Imaging Inc. v. Icing Images LLC, No. 13-cv-5449-CAS(PLAx), 2014 WL 1384028 at *2 (C.D. Cal Apr. 9, 2014) (noting that a plaintiff

must provide evidence to support a preliminary injunction)). The Court refuses to reach any such conclusion or finding regarding the items purchased by Plaintiff at this early stage of the litigation.[2]

### 3. Whether Plaintiff is Entitled to Preliminary Injunctive Relief

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). Alternatively, "serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." All. of the Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010).

A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and "preserve[s] the status quo pending a determination of the action on the merits." Chalk v. U.S. Dist. Court, 840 F.2d 701, 704 (9th Cir.

---

[2] Defendant also argues that Plaintiff failed to demonstrate causation for claims based on fraud. See Opp'n at 13. However, because Plaintiff's claims are not based on fraud the Court need not address these arguments. See MGA Ent., Inc. v. Dynacraft BSC, Inc., No. 2:17-cv-08222-ODW-KS, 2018 WL 2448123, at *3 (C.D. Cal. May 30, 2018).

1988). A mandatory injunction on the other hand "orders a responsible party to 'take action.'" Meghrig v. KFC W., 516 U.S. 479, 484 (1996). A mandatory injunction "goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored." Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1980) (internal quotation marks and citation omitted). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." Id. at 115. The status quo ante litem "means the last, uncontested status which preceded the pending controversy." Marlyn Nutraceauticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation marks and citation omitted).

The parties dispute whether the preliminary injunction Plaintiff seeks is prohibitory or mandatory. See Opp'n at 14-15; Reply at 4-5. Plaintiff argues that because in the trademark context, the status quo is the status that existed before the alleged infringer began using the alleging infringing mark, her preliminary injunction is prohibitory in that it would prohibit Redbubble from continuing to use counterfeit marks. See Reply at 4-5. Defendant on the other hand contends that the requested injunction is mandatory as it would require Redbubble to take on the affirmative task of identifying which of its 51 million or so third-party product listings may be counterfeit under the Lanham Act and remove them. See Opp'n at 14.

While it is true that in the trademark context, the status quo ante litem is the status that existed before the alleged

8

infringement, see GoTo.com, Inc v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000), the Court agrees with Defendant that this case is distinguishable from those cited by Plaintiff and the preliminary injunction is mandatory in nature.  The trademark cases Plaintiff relies upon involved a single trademark infringement.  See Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1122 (9th Cir. 2014) (involving use of the mark "pom" on a pomegranate-flavored energy drink); CycleBar Franchising, LLC v. StarCycle Franchise, LLC, No. CV 19-9911-DMG (KSx), 2020 WL 3840442 (C.D. Cal. Mar. 27, 2020) (involving indoor cycling studios use of the "CycleStars" mark).  As such, the requested preliminary injunction specified what marks were infringing and what defendants were prohibited from using.  See Pom Wonderful LLC, 775 F.3d at 1122 ("Pom Wonderful moved for a preliminary injunction to enjoin Pur from selling or marketing its 'pom' beverage."); CycleBar Franchising, LLC, 2020 WL 3840442 at *1 ("StarCycle seeks an order from this Court preventing CycleBar from using its CycleStars mark 'in any form or stylization in connection with providing fitness instruction or any goods or services thereto.'")

Contrastingly here, the relief Plaintiff seeks is much more sweeping.  Plaintiff asks the Court not just to prohibit the sale of the alleged counterfeit United Nations and Dadalorian sweatshirts she purchased but also to prohibit Defendant from selling any counterfeit merchandise.  See Mot. at 25 ("Plaintiff respectfully requests that the Court enjoin Redbubble from selling or allowing the sale of counterfeit products on its website.")  While phrased in a prohibitory manner, practically,

9

because Plaintiff has not identified all the items that are allegedly counterfeit, this would require Defendant to take on the affirmative task of identifying which of its third-party product listings may be counterfeit and ensure they are removed. See Opp'n at 14. Accordingly, this case is more akin to Garcia v. Google, Inc., 786 F.3d 733 (9th Cir. 2015). In that case the plaintiff requested a preliminary injunction requiring Google to remove a film that she claimed violated her copyright interest from all of its platforms, including YouTube. Id. at 737. The Ninth Circuit found this was a mandatory injunction because it required Google to take affirmative action—to remove and keep removing the film from YouTube and other sites, whenever and by whomever the film was uploaded. Id. at 740. Similarly here, Plaintiff's requested injunction would require Defendants to sift through and identify which images uploaded by third-parties may be counterfeit and remove those items. Thus, the preliminary injunction is mandatory in nature. Accordingly, Plaintiff has a greater burden to demonstrate this relief is warranted. See id.

*Likelihood of Success on the Merits*

Plaintiff has brought two claims: one under the UCL and one under the CLRA. See generally FAC. The CLRA prohibits the "[passing] off goods or services as those of another." Cal. Civ. Code § 1770(a)(1). The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Profs. Code § 17200. The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by

law." Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th at 180 (quotation marks and citation omitted). By proscribing "any unlawful" business practice, the UCL permits injured consumers to "borrow" violations of other laws and treat them as unfair competition that is independently actionable. Id. A practice may be unlawful and actionable under the UCL if it violates any "civil, criminal, statutory or judicially made, federal, state or local" law. McKell v. Washington Mutual, Inc., 142 Cal.App.4th 1457, 1474 (Ct. App. 2006).

Here, Plaintiff brings a claim under the unlawful prong of the UCL for violations of the Lanham Act. Defendant argues that because Plaintiff would not have statutory standing to bring a claim under the Lanham Act, she cannot bring a UCL claim for such violations. See Opp'n at 17. The Court disagrees. Defendant is correct that Plaintiff as a consumer would not have standing to sue under the Lanham Act itself. See Barrus v. Sylvania, 55 F.3d 468, 470 (9th Cir. 1995) ("As consumers, [plaintiffs] have alleged neither commercial injury nor competitive injury. Therefore [. . .] they lack standing.") However, this does not preclude her from bringing a claim under the UCL for violations of the Lanham Act. See Ferrington v. McAfee, Inc., No. 10-cv-01455-LHK, 2010 WL 3910169, at *15 (N.D. Cal. Oct. 5, 2010) (finding that plaintiff could assert a Lanham Act claim as the predicate for a UCL claim even though the plaintiff had no standing under the Lanham Act). As the Court in Ferrington explained, California courts have found that "[t]o forestall an action under the unfair competition law, another provision must actually 'bar' the action." Id. (quoting Cel-

Tech, 20 Cal. 4th at 183). "Thus, if a statute indicates that exclusive enforcement authority shall lie with the government and explicitly precludes private enforcement, or if a statute expressly provides immunity for the conduct alleged, a plaintiff may not plead around this bar by bringing a claim under the UCL." Id. Further the court explained that "[t]he Lanham Act permits private enforcement by individuals and businesses who have suffered competitive or commercial injuries, and while the courts have determined that standing is limited to such persons, Defendant cites no authority suggesting that this limitation constitutes an express, absolute bar." Id. Accordingly, "Plaintiffs may predicate their UCL claim on the Lanham Act, even though they have no independent private right of action under the Act itself." Id.

Having determined that Plaintiff may bring a claim under the unlawful prong of the UCL based on violations of the Lanham Act, the next step is to determine whether Plaintiff has demonstrated she is likely to succeed in showing a violation of the Lanham Act. The Lanham Act prohibits the use of a "reproduction, counterfeit, copy, or colorable imitation" of a registered trademark in such a way as "is likely to cause confusion, or to cause mistake, or deceive." 15 U.S.C. § 1114(1). There is a similar provision prohibiting the use of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin" which "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1125(a)(1)(A). For infringement to rise to the level of counterfeiting the defendant (1) must use a non-genuine mark

identical to the registered mark; (2) that was registered on the Principal Register for use on the same goods to which defendant applied the mark; (3) the registered mark was in use; and (4) defendant was not authorized to use the mark. See State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 721 (9th Cir. 2005).

Plaintiff's UCL and CLRA claims rest on a theory that the sweatshirts she purchased, as well as other products sold on Redbubble's website, are counterfeit. See Mot. at 13-20. But Plaintiff asks the Court to conclude at this early stage of the litigation that these items are in fact counterfeit without offering much to support this contention. See Mot. at 13 ("That massive quantities of counterfeit products are sold and offered for sale by Redbubble on www.redbubble.com cannot be seriously disputed.") While Plaintiff offers evidence that the United Nations Organization has an active registered word mark and logo, see Decl. of Mathew Venezia, ECF No. 16-5., she offers no convincing evidence that the mark on the sweatshirt was not genuine[3], that the mark was registered for use on the same goods to which defendant applied the mark (sweatshirts), or that defendant was not authorized to use the mark. See State of

---

[3] Plaintiff's declarations from her attorneys that they reviewed the website and thought the items appeared to be counterfeit are insufficient. See Decl. of Phillip Paley in Support of Prelim. Inj. ¶ 3, ECF No. 16-13 (declaration of a paralegal at Plaintiff's attorney's firm stating he visited Redbubble's website and numerous items appeared to be counterfeit); Tseng v. Home Depot USA, Inc., No. C05-0908RSM, 2006 WL 521723, at *3 (W.D. Wash. Mar. 2, 2006) (noting that arguments of counsel and "conclusory factual statements [. . .] are improper in support of [a] motion for preliminary injunction.")

13

Idaho Potato Comm'n, 425 F.3d at 721. Accordingly, the Court finds Plaintiff has not met her heavy burden of showing a likelihood of success on the merits on either claim.

Because Plaintiff has failed to demonstrate a likelihood of success on the merits the Court need not consider the remaining elements. See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three Winter elements.") (internal quotation marks and citations omitted).

### III. ORDER

Because Plaintiff has failed to meet her burden to demonstrate preliminary injunctive relief is warranted, the Court DENIES her Motion for Preliminary Injunction.

IT IS SO ORDERED.

Dated: September 20, 2021

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE