Teresa H. Michaud (State Bar No. 296329)
 teresa.michaud@bakermckenzie.com
**BAKER & McKENZIE LLP**
10250 Constellation Blvd., Suite 1850
Los Angeles, California  90067
Telephone:  310.201.4728
Facsimile:  310.201.4721

Alexander G. Davis (State Bar No. 287840)
 alexander.davis@bakermckenzie.com
Anne Kelts Assayag (State Bar No. 298710)
 anne.assayag@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304
Telephone:  650.856.2400
Facsimile:   650.856.9299

Attorneys for Defendant
REDBUBBLE, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAMILLE FAYE VINLUAN-JULARBAL,<br><br>Plaintiff,<br><br>vs.<br><br>REDBUBBLE, INC.,<br><br>Defendant. | **Case No. 2:21-cv-00573-JAM-JDP**<br><br>Before The Honorable John A. Mendez<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT REDBUBBLE, INC.'S MOTION TO BIFURCATE DISCOVERY**<br><br>**Date:**     November 16, 2021<br>**Time:**     1:30 p.m.<br>**Dept.:**    6, 14th Floor<br>**Judge:**    Hon. John A. Mendez<br><br>Date Action Filed: March 29, 2021 |

1

## **TABLE OF CONTENTS**

2
                                                                                    **Page**

3   I.      INTRODUCTION ............................................................................................ 1

4   II.     PLAINTIFF'S ALLEGATIONS ..................................................................... 4

5   III.    ARGUMENT .................................................................................................. 5

6           A.      The Court Has Discretion to Bifurcate Individual and Class Discovery ..................... 5

7           B.      Bifurcation Will Preserve Judicial and Party Resources Pending Disposition of
                    Threshold Issues as to Plaintiff's Individual Claims ................................... 6
8
            C.      Bifurcation Will Streamline Resolution of Plaintiff's Fundamentally Defective Class
9                   Claims ............................................................................................ 11

10  IV.     CONCLUSION................................................................................................ 14

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMF, Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ...................................................................................12

*ASM Am., Inc. v. Genus, Inc.*,
  No. 01-2190 EDL, 2002 U.S. Dist. LEXIS 1351 (N.D. Cal. Jan. 9, 2002) ...................8

*Bischoff v. DirecTV, Inc.*,
  180 F. Supp. 2d 1097 (C.D. Cal. 2002) ........................................................................2

*Conboy v. Wynn Las Vegas LLC*,
  No. 2:11-CV-1649 JCM (CWH), 2013 U.S. Dist. LEXIS 55558 (D. Nev. Apr. 18,
  2013) .............................................................................................................................6

*Craigslist Inc. v. 3Taps Inc.*,
  942 F. Supp. 2d 962 (N.D. Cal. 2013) ..........................................................................7

*Dang v. Samsung Elecs. Co.*,
  No. 14-CV-00532-LHK, 2018 WL 6308738 (N.D. Cal. Dec. 3, 2018) .........................7

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001) ........................................................................................5

*DeLeon v. Time Warner Cable LLC*,
  No. CV 09-2438 AG, 2009 U.S. Dist. LEXIS 135122 (C.D. Cal. Nov. 2, 2009) ..........8

*Ellingson Timber Co. v. Great N. Ry. Co.*,
  424 F.2d 497 (9th Cir. 1970) ....................................................................................1, 5

*Fitzgerald v. Pollard*,
  No. 20cv848-JM (NLS), 2021 U.S. Dist. LEXIS 98956 (S.D. Cal. May 25, 2021) .......8

*Gen. Patent Corp. Int'l v. Hayes Microcomputer Prods.*,
  No. SA CV 97-429-GLT(ANx), 1997 U.S. Dist. LEXIS 21342 (C.D. Cal. Oct. 20,
  1997) .............................................................................................................................8

*Giglio v. Monsanto Co.*,
  No. 15-cv-2279-BTM (WVG), 2016 U.S. Dist. LEXIS 101983 (S.D. Cal. Aug. 2,
  2016) .............................................................................................................................8

*Gray v. First Winthrop Corp.*,
  133 F.R.D. 39 (N.D. Cal. 1990)....................................................................................6

*Howard v. CVS Caremark Corp.*,
  No. CV 13-04748 SJO, 2014 U.S. Dist. LEXIS 172406 (C.D. Cal. Dec. 9, 2014)......11

ii

*Kamar v. Radio Shack Corp.*,
  375 F. App'x 734 (9th Cir. 2010) ............................................................................11

*Neo4j, Inc. v. Purethink*,
  No. 5:18-cv-07182-EJD, 2021 U.S. Dist. LEXIS 115090 (N.D. Cal. May 18,
  2021) ..........................................................................................................................7

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) .....................................................................................7

*Reliance Insurance. Co. v. Wilson*,
  No. C 90-20006 JPV, 1990 WL 751025 (N.D. Cal. Oct. 3, 1990) ...........................8, 9

*Romero v. Select Empl. Servs.*,
  No. CV 19-06369-AB, 2020 U.S. Dist. LEXIS 79907 (C.D. Cal. March 31, 2020)....................11

*Stafford v. Dollar Tree Stores, Inc.*,
  No. 2:13-cv-1187 KJM CKD, 2014 U.S. Dist. LEXIS 163458 (E.D. Cal. Nov. 21,
  2014) ..........................................................................................................................8

*Stephens v. Nordstrom, Inc.*,
  No. CV 17-5872 DSF, 2018 U.S. Dist. LEXIS 223164 (C.D. Cal. Dec. 26, 2018) .....................13

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ............................................................................2, 7, 9

*Tan v. GrubHub, Inc.*,
  No. 15-cv-05128-JSC, 2016 U.S. Dist. LEXIS 186342 (N.D. Cal. July 19, 2016)....................13

*United States ex rel. Terry v. Wasatch Advantage Grp., LLC*,
  No. 2:15-cv-00799-KJM-DB, 2020 U.S. Dist. LEXIS 7090 (E.D. Cal. Jan. 14,
  2020) ..........................................................................................................................12

*Tiffany Inc. v. eBay, Inc.*,
  600 F.3d 93 (2nd Cir. 2010).........................................................................................9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods.
  Liab. Litig.*,
  No. 8:10-ml-02151-JVS-FMP, 2010 U.S. Dist. LEXIS 86136 (C.D. Cal. July 20,
  2010) ..........................................................................................................................8

*True Health Chiropractic Inc. v. McKesson Corp.*,
  No. 13-cv-02219-JST, 2015 U.S. Dist. LEXIS 7015 (N.D. Cal. Jan. 20, 2015) ....................6, 14

*Van Lith v. iHeartmedia + Entm't, Inc.*,
  No. 1:16-cv-066-LJO-SKO, 2016 U.S. Dist. LEXIS 96853, at *13-16 (E.D. Cal.
  July 25, 2016).............................................................................................................12

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) .......................................................................................6

iii

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
    200 F.3d 795 (Fed. Cir. 1999)..................................................................................6

*Young v. Mophie, Inc.*,
    No. SACV 19-827............................................................................................3, 10

**Statutes / Other Authorities**

California's Unfair Competition Law ..................................................... *passim*

Communications Decency Act Section 230 .......................................................7

Consumers Legal Remedies Act ........................................................... *passim*

Copyright Act.......................................................................................... *passim*

Fed. R. Civ. P. 1 ...............................................................................................5

Fed. R. Civ. P.  23 ................................................................................ *passim*

Fed. R. Civ. P. 26(b)(1)....................................................................................3

Fed. R. Civ. P. 42(b) .....................................................................................5, 6

Lanham Act.............................................................................................. *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Defendant Redbubble Inc. respectfully requests the Court bifurcate discovery on Plaintiff Kamille Faye Vinluan-Jularbal's individual and class claims in order to drastically streamline the Court's management of this entirely unprecedented and patently defective class action. "One of the purposes of [bifurcation] is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970).   This case presents the paradigmatic circumstances for such treatment: (1) Plaintiff seeks to unilaterally enforce as a consumer the purported intellectual property rights of untold numbers of absent third-parties under both the Lanham Act and Copyright Act, which is a legal theory that no court has ever allowed to proceed past the pleading stage, let alone on a nationwide class action basis; and (2) her class definition—essentially, anyone who purchased a "counterfeit or infringing" product from non-party designers posting content to Redbubble's online marketplace—is fatally flawed because it is a so-called "fail safe" class that requires a finding of ultimate liability on millions of trademarks just to determine class membership.

No court has ever certified a consumer's trademark-infringement class action, and certainly not one encompassing the unascertainable class Plaintiff seeks to represent here.  Thus, Plaintiff cannot seriously dispute that to have any chance of satisfying the requirements for class certification under Federal Rule of Civil Procedure 23, at a minimum she will have to rewrite her class definition to include some objective membership criteria.  In fact, she revealed that her intention may be to seek certification of a class of customers "who purchased products Redbubble later removed from its website for violation of Redbubble's content moderation policy."  (ECF No. 62, at 15:14-16.) Plaintiff's proposed "solution" (i) involves a class definition that vastly exceeds any conceivable notion of intellectual property infringement supposedly underlying her claims, (ii) includes countless sales of items that do not support even the suggestion of any legal liability, and (iii) ultimately guarantees a lack of "predominance" under Rule 23(b) given the necessity to perform literally millions of mini-trials about whether individual designs uploaded by third parties to Redbubble's marketplace are or are not actually infringing in light of all relevant circumstances.  Nevertheless, Plaintiff has relied on this "content moderation policy" concept to attempt to compel production of detailed

information about **29,760,530** product sales, a request that Redbubble has estimated would take it at least **3,307** hours—more than 82 weeks—to compile and produce. This is simply not feasible nor proportional discovery.

Given that Plaintiff will indeed have to go back to the drawing board to come up with a new class definition, Redbubble submits that the most fair and efficient method for doing so is to proceed through discovery on Plaintiff's individual claims in order to determine for which theories of intellectual property infringement and for which potential class of consumers, if any, she is actually capable of serving as a class representative.

Discovery and resolution of Plaintiff's individual claims can proceed quickly and efficiently. After all, although she is demanding immediate production of almost **30,000,000 sales records**, Plaintiff alleges simply that she bought two sweatshirts on the Redbubble marketplace in December 2020 and January 2021. She claims these sweatshirts contain designs that infringe the intellectual property rights of two absent third parties. While Plaintiff has indicated that she wishes to pursue multiple distinct infringement theories against Redbubble on a *class-wide basis*—including vicarious trademark infringement, contributory trademark infringement, direct trademark infringement, trademark counterfeiting, copyright infringement, and others—it is clear that the allegations underlying her *individual* claim could never support all of these theories. Moreover, the black-letter Ninth Circuit law is that the Copyright Act preempts a California Unfair Competition Law claim "whose prosecution would require the litigation of the underlying infringement claim." *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1141 (9th Cir. 2008). So in no case could copyright infringement claims ever be at issue in this consumer Unfair Competition Law litigation. Furthermore, any putative class members agreed to arbitrate their claims and have expressly waived their right to participate in a class action.[1]

---

[1] *See* Redbubble User Agreement, *available at* https://www.redbubble.com/agreement. While Redbubble made the decision to withdraw its motion to compel arbitration of Plaintiff's claims after she breached the Agreement and forced the parties to incur the costs of fully briefing her ultimately unsuccessful motion for preliminary public injunctive relief, that decision affects Plaintiff only and has no impact on the enforceability of Redbubble's arbitration agreement with absent putative class members. *See, e.g.*, *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1113 (C.D. Cal. 2002) ("[T]o hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd.").

Case No. 2:21-cv-00573-JAM-JDP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO BIFURCATE

Despite these circumstances, all of which are known to Plaintiff, her counsel has demanded that Redbubble produce (1) every record of every sale on the Redbubble marketplace of "infringing products" or products removed pursuant to broad "content moderation policies"; (2) internal policies and operations materials going as far back as 2015 (more than a half-decade before Plaintiff's alleged purchases); and (3) the personal contact information for every individual who has purchased an allegedly "infringing" product; among dozens of other invasive and burdensome demands.

Redbubble asks that the Court bifurcate discovery into individual and class issues in order to avoid the inevitable burdens for both Redbubble and the Court that will arise in prosecuting a class action based on a patently defective class definition. It proposes instead that, after Plaintiff obtains full discovery on her individual claims, the parties either reach agreement or, if necessary, resolve through summary judgment the specific intellectual property infringement theories that are actually at issue (if any) based on Plaintiff's purchase of the two sweatshirts alleged in the First Amended Complaint. At that point, the parties can proceed to class discovery that is proportional to the live issues in the case—just as Federal Rule of Civil Procedure 26(b)(1) requires—followed by a motion for class certification.

This proposal serves the policies underlying bifurcation: "Phased discovery may prevent the parties from engaging in broad and possibly wasteful efforts. Proceeding immediately on all class-wide issues would subject the parties to highly extensive discovery that may ultimately be unnecessary if [the defendant] prevails on dispositive motions regarding Plaintiffs' individual claims" following individual discovery. *See Young v. Mophie, Inc.*, No. SACV 19-827 JVS (DFMx), 2020 U.S. Dist. LEXIS 38658, at *8-9 (C.D. Cal. Jan. 7, 2020) (granting defendants' motion to bifurcate class and individual issues on consumer plaintiffs' Unfair Competition Law and Consumers Legal Remedies Act claims). As set forth in the accompanying declaration of Redbubble's in-house legal counsel James Toy, bifurcation will relieve Redbubble of the astronomical expense and business disruption of having to produce almost 30 million detailed sales records that far exceed the scope of Plaintiff's viable intellectual property infringement allegations and for which Plaintiff could never serve as a class representative. Bifurcating discovery will also preserve substantial *judicial* resources: considering the flaws in Plaintiff's class definition and the scope of her desired class-wide discovery,

proceeding with class discovery now would guarantee that the Court would have to resolve discovery motions relating to Plaintiff's demands for tens of millions of documents and then confront a sprawling class certification motion premised on a defective class definition.

Finally, there is no prejudice to Plaintiff by simply resolving the merits of her individual claims following full discovery on those claims. Plaintiff does not own the intellectual property rights she purports to enforce. She has already moved for public preliminary injunctive relief, and the Court denied the motion. (*See* ECF No. 59.) Any matters that Plaintiff may claim involve absent and undefined class members are being preserved by Redbubble.

For all of these reasons, Redbubble respectfully requests that the Court exercise its discretion to grant the Motion and bifurcate discovery.

## II.   PLAINTIFF'S ALLEGATIONS

Plaintiff is a consumer residing in Elk Grove, California. (ECF No. 7 (FAC) ¶ 1.) In December 2020, she purchased a sweatshirt from an online marketplace operated by Redbubble in which third-party sellers may upload their artwork and offer it for sale on various products, such as t-shirts, phone cases, and wall art, which are printed by third-party fulfillers. (*Id.* ¶¶ 7, 35.) For the first sweatshirt at issue, the seller titled its product listing as "UNITED NATIONS," with the uploaded image displayed directly below (the "First Accused Product"). (*Id.* ¶ 35.) In January 2021, Plaintiff purchased a second sweatshirt from a different third-party seller, this one with an image of the phrase "The Dadalorian" in a certain font and style (the "Second Accused Product"). (*Id.* ¶ 38.) As with all listings on the Redbubble marketplace, both of these designs clearly disclosed the name of the third-party seller that had uploaded the product image and was offering it for sale. (*See id.* ¶ 8.)

Plaintiff received the sweatshirts (*see id.* ¶ 68), and does not allege that either appeared different than as depicted on the website. Plaintiff alleges no other representations at all made by or attributable to Redbubble about either sweatshirt. Instead, Plaintiff admits that she relied on certain conclusory *assumptions*: (1) on "Redbubble's compliance with applicable laws" (FAC ¶ 44), and (2) that the two sweatshirts "were what they purported to be" (FAC ¶ 69).

Plaintiff then alleges through bald legal conclusions that the sweatshirts are "infringing" and/or "counterfeit" under the federal Lanham and Copyright Acts. (FAC ¶¶ 35, 66.) Plaintiff does not own

4

the intellectual property or trademark rights which she claims were infringed.  She concedes that the owners are corporate entities, neither of whom is a party to this lawsuit.  (*See id.* ¶¶ 36, 42.)  Plaintiff does not allege that either corporate entity assigned its rights to her.  Plaintiff does not allege that either corporate entity contacted Redbubble and asked that the design be removed from Redbubble's marketplace.  Plaintiff further does not allege that the third party who designed the First Accused Product and offered it for sale on the Redbubble marketplace lacked authorization from the registered trademark holder to do so, or that the listing created any likelihood of confusion.  Plaintiff also does not allege a registered copyright relating to the Second Accused Product, nor does she explain what elements of the product are supposedly subject to federal copyright protection.

Plaintiff asserts causes of action under the UCL and CLRA based on Redbubble's allegedly "unlawful" practices of alleged trademark and copyright infringement.  (*Id.* ¶¶ 66, 73.)  In addition to her own claims, she seeks to represent a class defined as follows:

> All persons or entities in the United States that have **purchased counterfeit or infringing products** from Redbubble, by way of its website, www.redbubble.com. For the purposes of this class, **counterfeit or infringing products are defined to include all products sold in violation of the Lanham Act and Copyright Act, or similar state-law statutes**.

(*Id.* ¶ 52 (emphasis added).)

Plaintiff originally propounded sixty-nine discovery requests on Redbubble, all of which sought discovery solely on class-wide issues.  (Declaration of Alexander G. Davis in Support of Motion to Bifurcate, Exs. A, B.)  On October 4, 2021, she issued discovery requests relating to her individual claims.

## III.   ARGUMENT

### A.   The Court Has Discretion to Bifurcate Individual and Class Discovery

Courts may order separate trials of claims or issues "[f]or convenience, to avoid prejudice, or to expedite and economize."  *See* Fed. R. Civ. P. 42(b); *see also* Fed. R. Civ. P. 1 (providing that the federal rules "should be construed and administered to secure the just, speedy and inexpensive determination of every action").  As the Court has the power to order separate trials, "[i]t is implicit that the court also [has the] power to limit discovery to the segregated issues."  *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970); *see also Danjaq LLC v. Sony Corp.*, 263 F.3d

5

942, 961 (9th Cir. 2001) (Rule 42(b) confers "broad authority" on trial courts).  In addition, courts have considerable latitude to craft protective orders during discovery based on good cause.  *See Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (*citing* Fed. R. Civ. P. 26(c)); *see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803-04 (Fed. Cir. 1999) ("A district court has broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation.  When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved.").

"The decision to bifurcate discovery in putative class actions prior to certification is committed to the discretion of the trial court."  *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-JST, 2015 U.S. Dist. LEXIS 7015, at *4 (N.D. Cal. Jan. 20, 2015); *see also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("District courts have broad discretion to control the class certification process," including whether and when to permit class-wide discovery).  "Among the matters the court may consider in deciding whether to bifurcate are:  (1) the overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of Civil Procedure 23's requirement that certification be decided at an early practicable time, (3) judicial economy, and (4) any prejudice reasonably likely to flow from the grant or denial of a stay of class discovery."  *True Health*, 2015 U.S. Dist. LEXIS 7015, at *4; *see also Conboy v. Wynn Las Vegas LLC*, No. 2:11-CV-1649 JCM (CWH), 2013 U.S. Dist. LEXIS 55558, at *40 (D. Nev. Apr. 18, 2013) (stating that a court considering bifurcation weighs "convenience, prejudice, judicial economy, risk of confusion and whether the issues are clearly separable").

As set forth herein, all four of these factors militate in favor of bifurcating discovery on individual and class issues in this case.

### B.    Bifurcation Will Preserve Judicial and Party Resources Pending Disposition of Threshold Issues as to Plaintiff's Individual Claims

Plaintiff's claims hinge on dispositive issues ideal for bifurcation.  Her First Amended Complaint consists of two claims, under California's Unfair Competition Law (UCL) and Consumers Legal Remedies Act (CLRA), alleging that the two sweatshirts she purchased from third-party sellers

6

on Redbubble's online marketplace contain counterfeit or infringing trademarks in violation of the Lanham Act. No court has ever allowed a consumer UCL or CLRA claim to proceed based on a predicate theory of trademark infringement or counterfeiting. Those remedies belong exclusively to IP rights-holders, not to consumers, which is why Plaintiff will never be able to allege the first essential element of a Lanham Act claim: ownership of the intellectual property at issue. *See Neo4j, Inc. v. Purethink*, No. 5:18-cv-07182-EJD, 2021 U.S. Dist. LEXIS 115090, at *22-23 (N.D. Cal. May 18, 2021) (noting that to state a claim for Lanham Act infringement, a plaintiff must prove "(1) an ownership interest in a protectable mark; and (2) that Defendants' use of the mark is likely to cause consumer confusion") (citing 15 U.S.C. § 1114). Further, Plaintiff's attempt to assert violations of the federal Copyright Act through state law is preempted under well-established Ninth Circuit law. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1141 (9th Cir. 2008) ("[A] party lacking standing to bring a copyright infringement suit under the Copyright Act . . . may [not] bring a . . . state law unfair competition claim[] whose successful prosecution would require the litigation of the underlying infringement claim."). And all of Plaintiff's state law claims seeking to hold marketplace operator Redbubble liable for the content of third party content providers are barred by Section 230 of the federal Communications Decency Act. *See generally Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007) (finding interactive computer service protected by section 230 for state law claims relating to intellectual property). Finally, Plaintiff cannot allege an economic injury that was caused by any alleged conduct attributable to Redbubble, and so lacks standing to assert any UCL or CLRA claims in the first place. *See Dang v. Samsung Elecs. Co.*, No. 14-CV-00532-LHK, 2018 WL 6308738, at *9 (N.D. Cal. Dec. 3, 2018).

Considering the deficiencies in Plaintiff's theories of liability, this case can likely be fully adjudicated on the merits of Plaintiff's individual claims without the parties or the Court having to expend significant resources on class discovery and certification issues. Courts routinely order bifurcation where, as here, doing so could potentially resolve or limit the issues asserted in the underlying case. *See, e.g.*, *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013) (the "likelihood of streamlining discovery for and adjudication of" bifurcated claims, even if those claims ultimately proceed, warrants bifurcation until after "summary judgment motions have been

adjudicated"); *Fitzgerald v. Pollard*, No. 20cv848-JM (NLS), 2021 U.S. Dist. LEXIS 98956, at *4-6 (S.D. Cal. May 25, 2021) (granting motion to bifurcate discovery on individual and class claims where class claims would fail if motion for summary judgment were granted); *Giglio v. Monsanto Co.*, No. 15-cv-2279-BTM (WVG), 2016 U.S. Dist. LEXIS 101983, at *3 (S.D. Cal. Aug. 2, 2016) ("[T]he Court finds that conducting discovery in phases is an efficient solution that may prevent the parties from engaging in extremely broad and potentially wasteful discovery"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10-ml-02151-JVS-FMP, 2010 U.S. Dist. LEXIS 86136, at *2-3 (C.D. Cal. July 20, 2010) (ordering phased discovery to allow the parties to obtain "foundational, threshold information from Plaintiffs [and] class representatives" in order to be "more focused, economical and efficient in subsequent phases" of the action); *ASM Am., Inc. v. Genus, Inc.*, No. 01-2190 EDL, 2002 U.S. Dist. LEXIS 1351, at *18 (N.D. Cal. Jan. 9, 2002) (granting motion to sever and stay claims and related discovery to "promote an efficient resolution of the [initial] issues and substantially narrow or eliminate the [remaining] claims as a result"); *Gen. Patent Corp. Int'l v. Hayes Microcomputer Prods.*, No. SA CV 97-429-GLT(ANx), 1997 U.S. Dist. LEXIS 21342, at *4-5 (C.D. Cal. Oct. 20, 1997) (bifurcating discovery of "potentially dispositive" claims prior to addressing "infringement and damages issues . . . specific to each defendant").

For example, in *Stafford v. Dollar Tree Stores, Inc.*, No. 2:13-cv-1187 KJM CKD, 2014 U.S. Dist. LEXIS 163458 (E.D. Cal. Nov. 21, 2014), Judge Mueller granted a motion to bifurcate individual and representative claims "until plaintiff's status as an aggrieved employee with the right to bring this action is established," especially given that the representative claims would require individualized assessments of whether violations had occurred. *Id.* at *9, *11-12. The court in *DeLeon v. Time Warner Cable LLC*, No. CV 09-2438 AG (RNBx), 2009 U.S. Dist. LEXIS 135122 (C.D. Cal. Nov. 2, 2009) likewise found good cause for bifurcation "so that discovery and dispositive motions on Plaintiff's individual claims take place before submerging the parties in an ocean of class discovery." *Id.* at *3. The plaintiff in *DeLeon*, like Plaintiff here, had insisted on broad and unfettered class-wide discovery. *Id.* The court rejected the plaintiff's argument that bifurcation would improperly delay the case and concluded that the plaintiff would suffer no prejudice. *Id.* at *5. Similarly, in *Reliance Insurance. Co. v. Wilson*, No. C 90-20006 JPV, 1990 WL 751025 (N.D. Cal. Oct. 3, 1990), the court

ordered bifurcation of discovery to "serve judicial economy and potentially save the parties needless expense." *Id.* at *2. Considering the potentially dispositive issues presented in the first phase, the *Reliance* court reasoned that proceeding without bifurcation would mean that substantial discovery could be "utterly wasted," the "parties may well have had to devote resources to producing superfluous discovery material, and the court would have devoted valuable time to supervising contested discovery issues that could have been avoided." *Id.*

The same is true in this case. For example, Plaintiff demands every record of every conceivable sale of any product that she might argue supports a claim for copyright infringement. (*See* Davis Decl., Ex. A (Request for Production Nos. 1-6, 60).) Yet no party can use California state causes of action to prosecute alleged infringement under the federal Copyright Act. *See Sybersound Records*, 517 F.3d at 1141. Redbubble has moved for judgment on the pleadings on this issue (ECF No. 49), but Plaintiff has insisted on receiving all such discovery immediately, and has now moved to compel production of information to which she has no legal right in the first place. (*See* ECF No. 60.) Requiring that Redbubble produce now all discovery relating to potential copyright infringement would be an "utter[] waste[]" of resources. *See Reliance*, 1990 WL 751025, at *2.

As another example, Plaintiff's class-wide discovery demands information about every takedown request submitted to Redbubble by any third party for any reason. (Davis Decl., Ex. A (Request for Production Nos. 1-6, 36).) Redbubble has determined that producing all 186,222 takedown requests received during the applicable four-year limitations period would entail at least 3,103 hours to compile and produce. (Declaration of James Toy in Support of Motion to Bifurcate ("Toy Decl.") ¶ 11.) Plaintiff's counsel has indicated that such information would support claims against Redbubble for contributory trademark infringement and/or counterfeiting, which claims require evidence that Redbubble had "more than a general knowledge or reason to know that its service is being used to sell a specific counterfeit good," but, instead, "some contemporary knowledge [that] *particular listings* are infringing." *See Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 107 (2nd Cir. 2010) (emphasis added). But Plaintiff does not allege that either of the designs on the sweatshirts she purchased were ever subject to any takedown requests or that the "knowledge" requirements of this claim were otherwise met. Once discovery on Plaintiff's individual claims confirms this fact, this

9

species of infringement will no longer be at issue, and so the scope of any subsequent class discovery would be limited accordingly.

By contrast, absent bifurcation, Redbubble would be forced to devote extraordinary time and expense to producing the class discovery currently sought by Plaintiff.  The Court will likewise dedicate substantial judicial resources to resolving current and future disputes between the parties over the scope of permissible discovery, all culminating in a class certification motion involving a class definition that could never satisfy Rule 23 requirements.  Then, upon summary judgment, these efforts would be wasted once some or all of Plaintiff's claims are disposed of as legally and factually deficient. The burdens on Redbubble would be immense.  Assistant General Counsel James Toy has already expended substantial effort assessing the resources necessary to comply with just six of Plaintiff's 69 class-wide discovery demands.  (Toy Decl. ¶¶ 5-11.)  Plaintiff has moved to compel production of all sales records (including consumer contact information) for every product ever sold on the Redbubble marketplace containing a design that was removed pursuant to "content moderation policies," which policies target several categories of content unrelated to intellectual property issues.  (*See* ECF No. 60 at 7:15-8:13.)  Even limiting Plaintiff's request to those Redbubble content moderation policies concerning intellectual property in particular, this task would call for Redbubble to compile ***29,760,530*** sales records, a process that Redbubble has estimated based on its information technology capabilities would take it at least ***3,307*** hours to complete.  (Toy Decl. ¶¶ 8-11.)  In light of Plaintiff's purchase of two sweatshirts and her defectively-pled class definition, this exemplifies an undue and completely unnecessary discovery burden on Redbubble.  *See Young v. Mophie, Inc.*, No. SACV 19-827 JVS (DFMx), 2020 U.S. Dist. LEXIS 38658, at *8 (C.D. Cal. Jan. 7, 2020) (bifurcating discovery where defendant "identified burdens associated with class discovery that will consume significant resources," which could be "saved by resolving the individual claims at the outset").

To be absolutely clear, ***simply because a product listing was removed from Redbubble's marketplace because of content moderation policies and practices does not mean that the product gives rise to infringement liability under the Copyright or Lanham Acts***.  This is far from the case. Redbubble's removal policies never require an actual showing of infringement (Toy Decl. ¶ 9), and its proactive policing practices similarly relies on a far broader standard (*id.* ¶ 10).  Thus, the result of

10

responding to Plaintiff's extremely overbroad demands would be discovery—including disclosure of private individuals' sensitive personal information—that far exceeds the scope of Plaintiff's already sprawling and legally untenable class definition.

Avoiding this result is exactly why bifurcation exists.  If the Court directs the parties to proceed to discovery on Plaintiff's individual claims in the first instance, any of her claims that survive summary judgment could provide the basis for Plaintiff to attempt to rewrite her class definition using some objective membership criteria (*e.g.*, a specific time period, specific products, *etc...*), and proportional class discovery could move forward accordingly.  The result would be substantial savings of time and effort by both Redbubble and the Court, with absolutely no countervailing prejudice to Plaintiff and her dispute about her two sweatshirts.

### C.   Bifurcation Will Streamline Resolution of Plaintiff's Fundamentally Defective Class Claims

Even setting aside that Plaintiff's individual claims should fail on the merits, bifurcation of discovery is especially appropriate here considering the Rule 23 factors and the deficiencies in Plaintiff's class definition.

In seeking pre-certification class-wide discovery, Plaintiff "bears the burden of advancing a prima facie showing that the requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Romero v. Select Empl. Servs.*, No. CV 19-06369-AB (AGRx), 2020 U.S. Dist. LEXIS 79907, *4 (C.D. Cal. March 31, 2020).  Plaintiff has not met this burden.  She seeks to recover damages, restitution, and injunctive relief on behalf of "[a]ll persons or entities in the United States that have purchased *counterfeit or infringing* products" from third-party sellers on the Redbubble marketplace.  (FAC ¶ 52 (emphasis added).)  Plaintiff defines "counterfeit or infringing products" to include "all products sold in violation of the Lanham Act and Copyright Act, or similar state-law statutes."  (*Id.*)  This is an egregious example of a "fail-safe class," one that "impermissibly determines membership based upon a determination of liability."  *Howard v. CVS Caremark Corp.*, No. CV 13-04748 SJO (PJWx), 2014 U.S. Dist. LEXIS 172406, at *10 (C.D. Cal. Dec. 9, 2014); *see also Kamar v. Radio Shack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) (discussing "the obvious problems that exist when the class itself is defined in a way that precludes membership

11

unless the liability of the defendant is established," including that it is "palpably unfair to the defendant, and is also unmanageable"); *Van Lith v. iHeartmedia + Entm't, Inc.*, No. 1:16-cv-066-LJO-SKO, 2016 U.S. Dist. LEXIS 96853, at *13-16 (E.D. Cal. July 25, 2016) (striking class definition encompassing purported violations of Labor Code section as "a textbook example of an impermissible fail-safe class"). It is "essential that the identity of class members must be ascertainable by reference to objective criteria." *United States ex rel. Terry v. Wasatch Advantage Grp., LLC*, No. 2:15-cv-00799-KJM-DB, 2020 U.S. Dist. LEXIS 7090, at *14 (E.D. Cal. Jan. 14, 2020) (internal quotation marks omitted) (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010)). Plaintiff's class definition is bereft of any objective criteria and therefore fails at the outset.

Plaintiff's proposed class-wide discovery will thus require the impossible task of somehow determining in a vacuum which of the ***58 million*** or so designs currently uploaded to Redbubble's marketplace by third-party sellers (not to mention the hundreds of millions of designs that previously appeared during the four-year limitations period) might infringe or be counterfeits of the more than ***ten million*** registered trademarks, countless more unregistered marks, and even more copyrights.

Plaintiff's latest proposed solution—to define the class as those "who purchased products Redbubble later removed from its website for violation of Redbubble's content moderation policy" (ECF No. 62, at 15:14-16)—only hurts her class certification efforts because it raises an insoluble predominance problem. ***"Content moderation" is not a proxy for copyright and trademark infringement***. And buying an item with a design later removed pursuant to broad content moderation policies does not establish or even necessarily suggest any legal lability, much less infringement under the Lanham or Copyright Acts. So Plaintiffs would have the Court make millions upon millions of infringement determinations to determine which of the third-party designs captured by the class definition could conceivably support a claim for liability. Each trial would require an individualized inquiry into whether any of the tens of millions of U.S. trademarks are implicated, whether the non-party design lacked authorization to offer the listed product(s), the likelihood of consumer confusion (requiring application of an *eight factor* test[2]), any affirmative defenses (*e.g.*, parody, fair use, estoppel), and standing under the UCL and CLRA, among a host of other individual issues. *See, e.g.*,

---

[2] *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

*Stephens v. Nordstrom, Inc.*, No. CV 17-5872 DSF (KSx), 2018 U.S. Dist. LEXIS 223164, at *1 (C.D. Cal. Dec. 26, 2018) (denying class certification as to question of whether putative class members received authentic or counterfeit products "[c]onsidering that each [product] was unique, and the [products] came from several different sources"). Then the Court would need to determine whether Redbubble's specific conduct with respect to each of those sales gives rise to infringement against *Redbubble*—the only defendant in this action—rather than the third-party sellers who actually created and uploaded this content in the first place. Plaintiff's Rule 23(a) allegations identify still more *individual* issues—for example, calculation of damages for specific designs and products, consumers' subjective beliefs about specific purchases, the value that each consumer attributes to particular representations about any given product, Redbubble's supposed knowledge of individual instances of alleged infringement, and refunds to individual consumers who purchased items on the Redbubble marketplace. (*See* FAC ¶ 54.) And on top of all of this, all potential class members other than Plaintiff have waived their right to participate in a class action in favor of individual arbitration by virtue of their consent to Redbubble's User Agreement.[3]  *See Tan v. GrubHub, Inc.*, No. 15-cv-05128-JSC, 2016 U.S. Dist. LEXIS 186342, at *2 (N.D. Cal. July 19, 2016) ("[B]ecause Lawson is one of only two GrubHub delivery drivers in California who opted out of GrubHub's arbitration and class waiver provisions, Plaintiffs cannot satisfy the requirements of Federal Rule of Civil Procedure 23.").

Plaintiff's main response to these points is that the infringement and counterfeiting alleged is supposedly so *obvious* that it can all be established without the need for any extensive individual inquiries about particular designs. (*See, e.g.*, ECF No. 16 (Motion for Preliminary Injunction) at 13:25-26 ("That massive quantities of counterfeit products are sold and offered for sale by Redbubble on www.redbubble.com cannot be seriously disputed.").) But the Court has specifically rejected Plaintiff's effort to impose liability on Redbubble by fiat, finding instead that she must prove her infringement claims through evidence. (*See* ECF No. 59 (Order Denying Motion for Preliminary Injunction) at 12:9-13:3.) The Court is of course correct: in order for Plaintiff to succeed on the merits of her claims, the identity of the marks at issue actually matter; the details of the designs alleged actually matter; her specific infringement theories actually matter; affirmative defenses like parody

---

[3] *See* Redbubble User Agreement, *available at* https://www.redbubble.com/agreement.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO BIFURCATE

and fair use actually matter.  That is why discovery into and adjudication of Plaintiff's individual infringement claims is a necessary first step in determining the conceivable scope of a potential consumer class, and bifurcation is the perfect tool for this task.

Finally, as the foregoing indicates, the relevant factors all weigh strongly in favor of bifurcation.  *True Health*, 2015 U.S. Dist. LEXIS 7015, at *4.  First, Plaintiff purports to represent purchasers of tens of millions of unique products all sold by different third parties on Redbubble's platform, so there is little to no overlap between the individual discovery to which Plaintiff is entitled and the class discovery she seeks.  *Cf. id.*  Second, bifurcation will promote Rule 23's requirement that certification be decided at an early practicable time, as proceeding with discovery on Plaintiff's individual claims first will either (1) obviate the need for any decision on class issues (because Plaintiff's claims fail at the outset) or, at a minimum, (2) ensure that the parties can proceed to class issues—if and when appropriate—more efficiently and without delay while also providing Plaintiff some guidance in rewriting her current defective class definition.  *Id.*  Third, as explained above, bifurcating discovery will promote judicial economy by reserving motions and disputes about the scope of class-wide discovery until a later stage, if they are required to be litigated at all.  *Id.*  Fourth and finally, allowing the parties to proceed with limited discovery on Plaintiff's individual claims first will not prejudice Plaintiff, while Redbubble will be significantly prejudiced if it is forced to produce mountains of class-wide discovery now (to the extent compliance is even possible) before the Court can even evaluate or Plaintiff can even ascertain the viable legal theories (if any) supporting her claims.

## IV.   CONCLUSION

Given the myriad deficiencies in Plaintiff's legal theories and class definition, Redbubble respectfully requests that the Court bifurcate discovery and direct the parties to (i) complete full discovery on the merits of Plaintiff's individual claims, (ii) move for summary judgment upon the close of that process, and (iii) conduct class-wide discovery proportional to any of Plaintiff's surviving claims.  Convenience, efficiency, judicial economy, and fundamental fairness all support bifurcation.

///

///

///

1   Dated: October 7, 2021                 **BAKER & McKENZIE LLP**

2

3                             By: */s/ Teresa H. Michaud*
                                Teresa H. Michaud

4                                 Attorneys for Defendant
                                REDBUBBLE, INC.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

1

## CERTIFICATE OF SERVICE

2

   I, Teresa H. Michaud, declare:  I am over the age of 18 years and not a party to the
within action.  My business address is Baker & McKenzie LLP, 10250 Constellation Blvd., Suite

3

1850, Los Angeles, California  90067.  On **October 7, 2021**, I served the following document:

4

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT REDBUBBLE, INC.'S MOTION TO BIFURCATE DISCOVERY

5

6

on the interested parties in this action, addressed as follows:

7

## SEE ATTACHED SERVICE LIST

8

☒    **(VIA CM/ECF NOTICE OF ELECTRONIC FILING):** I caused said document(s) to be filed

9

and served by means of the Court's electronic transmission of the Notice of Electronic Filing
through the Court's transmission facilities, to the parties and/or counsel who are registered as

10

CM/ECF Users, as set forth in the service list of the Court.

11

12

   I declare under penalty of perjury under the laws of the United States of America and the
State of California that the foregoing is true and correct.  Executed at Santa Barbara, California on

13

**October 7, 2021.**

14

   */s/ Teresa H. Michaud*

15

Teresa H. Michaud

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**SERVICE LIST**

3

| | |
|---|---|
| **Keith J. Wesley, Esq.**<br>**Matthew Lawrence Venezia, Esq.**<br>Browne George Ross O'Brien Annaguey & Ellis LLP<br>2121 Avenue of the Stars,  Suite 2800<br>Los Angeles, CA  90067<br>Tel:  310-274-7100<br>Fax: 310-275-5697<br>Email: kwesley@bgrfirm.com<br>Email: mvenezia@bgrfirm.com | ***Counsel for Plaintiff***<br>**Kamille Faye Vinluan-Jularbal** |
| **Kenneth B. Wilson, Esq.**<br>Coastside Legal<br>455 1st Avenue<br>Half Moon Bay, CA  94019<br>Tel:  650-440-4211<br>Email: ken@coastsidelegal.com | ***Co-Counsel for Defendant***<br>***Redbubble, Inc.*** |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17
